GEORGE W. HONEYMAN *et al.*

*v.*

SAMUEL JARVIS, Guardian, etc.

1. CONSIDERATION—*settlement of doubtful claim is a good consideration for a promise.* The compromise of a doubtful right, though it afterwards turns out the right is on the other side, when there is neither actual nor

constructive fraud, and the parties act in good faith, with full knowledge of the facts, is a sufficient consideration to support a promise.

2. The real consideration which each party receives under a compromise being, not the sacrifice of the right, but the settlement of the dispute and the abandonment of the claim, it is no objection to the validity of the transaction, that the right was really in one of the parties only, and that the other had no right whatever. The fact that the one may have had no claim, is immaterial, if he was honestly mistaken in that regard.

3. Under the laws of Indiana, a guardian was required to give an additional bond upon making application for leave to sell real estate, with condition for the faithful payment and accounting for all money arising from such sale, and no sale could be ordered until such bond was given. The court was authorized to empower the guardian to make the sale or to appoint a commissioner for that purpose. The securities upon the guardian's bond given upon his appointment as guardian, were not liable for the proceeds of the sale of real estate. This being the law, a guardian petitioned the proper court for leave to sell real estate, and was, by the court, appointed a special commissioner to make sale, and ordered to file a bond, with his father as security, conditioned according to law. In pursuance of this order, the guardian and his father executed a bond conditioned for the faithful discharge of the duties of the trust of said guardian, as commissioner to sell, etc. The guardian, as commissioner, sold the land and reported the sale and the payment of the money to him, and at the same time made a settlement showing a large balance in his hands as guardian of his wards. This balance he never accounted for, but left the State, and, with his father, who was security on the bond for sale of land, came to Illinois. Another guardian was appointed for the wards in Indiana, who came to Illinois to see about the collection of this balance, and the father of the former guardian, and his security on the bond preliminary to the sale of the land, executed to the new guardian a promissory note in satisfaction of the claim. It did not appear that any fact was misrepresented or any knowledge in connection with the transaction was withheld by the new guardian: *Held*, that whether the maker of the note was liable on the bond or not, the claim was not so clearly and manifestly unfounded and absurd as to raise a presumption of fraud, and that the settlement of it was a good consideration for the note.

APPEAL from the Circuit Court of Mercer county; the Hon. GEORGE W. PLEASANTS, Judge, presiding.

Messrs. BASSETT & WHARTON, for the appellants.

Messrs. PEPPER & WILSON, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court.:

This suit was commenced in the county court of Mercer county, sitting for the transaction of probate business, where judgment was rendered in favor of appellee. Appellants took the case, by appeal, to the circuit court of that county, where a like judgment was rendered as in the county court, from which, by appeal, they bring the record before us.

Appellee claims on a promissory note, executed on the 18th of September, 1869, by appellants' testator, David Honeyman, and one William A. Jarvis, to him, as guardian for Thomas Brown and Melissa A. Brown, minors, for $2535.35, payable one day after date, with interest at the rate of six per cent per annum.

The defense is, that the note is void for want of consideration.

The substantial facts given in evidence to sustain the defense, are: John Honeyman, a son of the testator, was guardian for the same wards for whom appellee is now guardian, and others. Both he and his wards were residents of the State of Indiana, where all their property was also situated. At the spring term, 1857, of the Court of Common Pleas for Union county, Indiana, he petitioned the court for an order to sell certain lands of his wards. The court appointed appraisers to value the lands, who subsequently made report, which was approved by the court, and the court then decreed as follows:

"And the court having seen and examined the whole premises, order and decree the sale of said land upon the following conditions, hereinafter to be set forth. And the court appoints the said John Honeyman special commissioner, to sell the real estate in the petition described, and rule him to file bond with David Honeyman, security, in the penal sum of $6000, conditioned as the law directs, which is done, and reads in these words and figures, to-wit:

"Know all men, that we, John Honeyman and David Honeyman, are bound unto the State of Indiana in the penal sum of $6000, for the payment of which we jointly and severally bind ourselves, our heirs, executors and administrators.

"Sealed and dated the 15th day of May, 1857. The condition of the above obligation is, that, if the above bound John Honeyman shall faithfully discharge the duties of his trust, as commissioner to sell the real estate of the heirs of Albert H. Brown, deceased, according to law, then the above obligation to be void, else to remain in full force.

> JOHN HONEYMAN, [Seal.]
> DAVID HONEYMAN, [Seal.]

Approved by me this 15th day of May, 1857.

> LEWIS J. CLINE,
> *Clerk Union Common Pleas Court.*"

Honeyman took an oath to discharge the duties of commissioner, whereupon the court decreed that he make sale of the lands, prescribing the terms. Subsequently, he reported, as *special commissioner*, that he had sold the lands to James C. Nickels for $3500, and taken four notes, each for $875, therefor, the first payable December 25, 1857, and the others payable in one, two and three years thereafter. Afterwards, he reported the collection of these notes, in full, and the court decreed that he make a deed to Nickels for the land, and at the same time he made a settlement, showing that there was then in his hands, as guardian, and due to his wards, $5001.14, which settlement was approved by the court.

Sometime after this, and without having paid over to his wards, or to any succeeding guardian, the amount in his hands, he became insolvent, and removed to this State, where also removed, at or near the same time, appellants' testator, David Honeyman, his surety upon the bond executed preliminary to the sale of the land.

After appellee became guardian, and in 1869, he came to this State for the purpose of getting a settlement of the amount due, on account of the sale of the lands, to his wards,

21—79TH ILL.

and appellants' testator gave the note in suit in a settlement of the· amount claimed to be due from him to appellee's wards on account of the bond upon which he was surety.

It is argued by appellants that this bond was discharged when John Honeyman, as *special commissioner*, sold the lands and turned over the notes to himself *as guardian,* and therefore that appellants' testator was not liable on that bond or otherwise; that, not being indebted, there was nothing between him and appellee to settle, and there is therefore no consideration for the note.

It is not essential, to sustain the note, that it be absolutely certain appellants' testator was legally liable on the bond. The compromise of a doubtful right, though it afterwards turns out the right is on the other side, where there is neither actual nor constructive fraud, and the parties act in good faith, with full knowledge of the facts, is a sufficient consideration to support a promise. And it is, accordingly, said: " The real consideration which each party receives under a compromise, being, not the sacrifice of the right, but the settlement of the dispute and the abandonment of the claim, it is no objection to the validity of the transaction, that the right was really in one of the parties only, and that the other had no right whatever. The fact that the one may have had no claim, is immaterial, if he was honestly mistaken as to his claim." 1 Chitty on Conts. (11 Am. Ed.) note "m," and (1), p. 46. And this is the law as recognized by this court in *McKinley* v. *Watkins,* 13 Ill. 140, *Sigsworth* v. *Coulter,* 18 id. 204, and *Miller et al.* v. *Hawker,* 66 id. 186. And so it is also held in Indiana. In *Bond* v. *Coats,* 16 Ind. 202, the court, in discussing the question in its application to the facts then under consideration, say : " There is no pretense that the defendant made the promise to pay, or the payment on the agreement, under any mistake as to the facts, or fraud in reference to the circumstances. He had full knowledge of them, but he alleges he was mistaken as to his rights, in a matter in which he had constituted himself a judge in his own cause,

and decided against himself. We are of opinion that the weight of authority is, that he can not now be heard to reverse his own judgment."

Numerous English and American cases might be cited in support of the principle, but we shall conclude with a single quotation found in the remarks of Lord HARDWICKE, in *Stapelton* v. *Stapelton*, 1 Atkyns, at p. 12. He said, following a previous decision of Lord MACCLESFIELD: "An agreement entered into upon a supposition of a right, or of a doubtful right, though it after comes out that the right was on the other side, shall be binding, and the right shall not prevail against the agreement of the parties, for the right must always be on the one side or the other, and therefore the compromise of a doubtful right is a sufficient foundation of an agreement."

The execution of the note was not put in issue, and the burden was upon appellants to prove that the note was executed without any consideration. *Russell* v. *Cook*, 3 Hill, 504. That appellee claimed that appellants' intestate was liable on the bond, we think, if not clearly proved, is certainly not disproved. The circumstance of his coming from Indiana to this State, for the purpose of having the matter settled, and applying to the testator for that purpose, of itself, shows that he must have claimed that the testator was liable. There is no proof that he misrepresented any fact, or withheld any knowledge in connection with the transaction, or that the testator was not fully advised as to everything essential to a fair and deliberate judgment of what were his rights and obligations, when he executed the note.

The claim was not so clearly and manifestly unfounded and absurd as to raise a presumption of fraud.

It seems, by the law of Indiana, before a guardian is appointed, he must give bond for the faithful discharge of his duties as guardian, which, we may presume, in the present instance, John Honeyman did; but when he shall apply for an order to sell real estate, it is required that he shall exe-

cute bond "in double the appraised value of such real estate, with condition for the faithful discharge of his duties, and the faithful payment, and accounting for, of all moneys arising from such sale, according to law." Revised Stats. 1852, Vol. 2, p. 327, sec. 18, (Gavin & Hord's Stats. Vol. 2, p. 571, sec. 18.)

Section 20 of the same statute provides, "the court may empower such guardian to make sale of such real estate, or may appoint a commissioner or commissioners for that purpose."

It is held by the Supreme Court of that State, that the securities upon the guardian's bond, given upon his appointment, can not be held liable for money received by him from the sale of real estate sold pursuant to an order of court, and that the only security for that money is the bond given upon obtaining the decree authorizing him to sell, and that the securities upon such bond are liable for any failure to pay over or account for the money to the ward or succeeding guardian. *Warwick and another* v. *The State,* 5 Ind. 350; *The State ex rel.* v. *Steele,* 21 id. 207; *Potter and another* v. *State,* 23 id. 607.

It follows, therefore, if the bond signed by the testator did not secure the payment of the money received for the sale of the land, there was no security for it. It is manifest that the bond was intended for that purpose, and was so accepted by the court in ordering the sale, since no provision of the statute seems to require that a commissioner to sell shall give bond, and, his duties being limited to the mere act of selling, there is, perhaps, no necessity that he should be required to do so; but, until the guardian has given bond, the court is not authorized to decree a sale.

The individual who was guardian, and applied for the order of sale, gave the bond, and the court accepted it as a compliance with the statute, and he was decreed to sell. Is it a matter of substance by what designation or description this *person* was called, in these several proceedings? It would

seem that the substantial questions were, *who* was authorized to sell, and what were *his relations* to the wards; that is, was he guardian, or a stranger? and not, by what designation was he described in the orders and bond? It does not occur to us that simply calling a guardian commissioner, or calling a commissioner guardian, could make any difference in their powers or duties. The *individual* would act, and his act would be that of the *office* or *trust* he held *in fact*, whether the decree, in empowering or directing him to act, described that office or trust correctly or not. And, on the authority of *Coons et al.* v. *The People*, 76 Ill. 383, we would be inclined to hold that the words "special commissioner," should be regarded as a mere formal clerical error, and that the word "guardian" should be read in their place. What the Supreme Court of Indiana might have held, in this regard, we, of course, make no conjecture. It is sufficient that, in our opinion, the claim that the testator was liable on the bond, is not so unfounded and absurd as to raise the presumption that appellee knew he had no claim, and therefore acted in bad faith in taking the note.

We think the evidence utterly fails to establish the defense that the note is without consideration, and the judgment must therefore be affirmed.

*Judgment affirmed.*