RILEY KNOWLES

v.

HIRAM KNOWLES.

*Negotiable Instruments—Notes—Consideration—Compromise of Doubt-ful Right—Duress—Ademption—Propositions of Law.*

1.   The compromise of a doubtful right, in the absence of fraud and with full knowledge of the facts by all concerned, is a sufficient consideration for a promise.

2.   In an action upon promissory notes given under a compromise agreement, this court holds that the evidence fails to show that the compromise was brought about by fraud or duress, and declines to interfere with the judgment in behalf of plaintiff.

[Opinion filed September 21, 1888.]

APPEAL from the County Court of Menard County; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. T. W. McNEELY and N. W. BRANSON, for appellant.

The will of the appellant's father gave him an undivided one-third interest in the testator's real and personal estate, the same as it did his brothers Hiram and Prettyman, after providing for a few small bequests to others.   It is true, appellant had signed a paper, in his father's life-time, purporting to release his expectancy in his father's estate.   But his father afterward died testate, and by his will he devised one-third of his estate to appellant.   Conceding, for the sake of the argument, that if Marvel Knowles had died intestate, a court of equity would have given force to appellant's release of his expectancy in his father's estate, yet the fact remains that Marvel did not die intestate, but on the contrary, left his last will and testament, which was intended, and in law and equity is held to be the authoritative expression of his last will and intention in regard to the disposition of his estate.   That will took effect, not from its date, nor from the date of appellant's

Knowles v. Knowles.

release, but from the date of the testator's death. Every will is construed with reference to the real and personal estate therein devised, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will.

" The very nature of the testamentary act, which is expected to take effect only at the time of the decease of the testator, presupposes, that so far as facts and circumstances are susceptible of anticipation by him, so as to enable him to place himself in the position he will then be in relatively to his property and his obligations to his family, he will have used the language of his will with reference more particularly to that period."    1 Redfield on Wills (2d Ed.), *379–380.    See also notes.

" General devises and bequests seem to have been universally construed to include all which it was in the power of the testator to dispose of, which, as the law now stands, in most of the American States, will embrace all the testator's estate, whether real or personal, at the time of his decease." Ib. *385–6, and authorities cited.

" A will speaks from the death of the testator and not from its date, unless its language, by fair construction, indicates the contrary intention."    Canfield v. Bostwick, 21 Conn. 550; Updike v. Tompkins, 100 Ill. 406.

Then the pretense of Lowe and Robinson as to appellant's inability to hold under the will, when they talked him into signing the notes, was false and fraudulent. The professional knowledge and character of these men gave them a manifest advantage over the plain farmer with whom they were dealing; they took an undue advantage of their opportunity, and misled him and betrayed his confidence.

There was no other consideration to the notes sued on, and there was no pretense of any other consideration. The only inducement urged for the giving of the notes was appellant's alleged liability on the indebtedness which his father had released him from, and his alleged inability to take under the will. The testimony is conclusive to this effect. Then as both of these inducements were false and fraudulent, there was no consideration whatever.

If it be contended that there was some sort of moral obligation on part of appellant to pay the discharged indebtedness, which would furnish a sufficient consideration for a new promise, such contention, in the light of authority, is not in accordance with the law.

A promise to pay a debt, after it has been released by the creditor, is not binding for want of consideration; and there is no moral obligation on the released debtor which is a sufficient consideration for a new promise; and there is a distinction between the case of a debt discharged by the voluntary act of the creditor, and the case of a debt discharged by some positive provision of law. Hale v. Hale, 124 Mass. 292; Ingersol v. Martin, 58 Md. 67; 42 Am. Rep. 322; Stafford v. Bacon, 1 Hill, 532; Warren v. Whitney, 42 Me. 561; Montgomery v. Lampton, 3 Metc. 519; Shepard v. Rhoades, 7 R. I. 470; Valentine v. Foster, 1 Met. 522; Snevily v. Reed, 9 Watts, 396; Wright v. Clarke, 34 Miss. 116; Mason v. Campbell, 27 Minn. 54.

The principle of ademption or satisfaction of a legacy by a subsequent gift, is applicable only to legacies of personal property, and not to devises of land. "The principle of ademption by subsequent portion has not been applied to devises of real estate." 2 Redfield on Wills, 539, Ed. 1866.

A devise of real estate can not, like a pecuniary legacy, be affected by any subsequent transaction between the testator and the devisee, but must stand until it is revoked or altered in the manner prescribed by law." Allen v. Allen, 13 S. C. 512; 36 Am. Rep. 716.

The principle of ademption, or presumption of satisfaction, will not apply where the legacy and the subsequent portion or gift are not *ejusdem generis*. 2 Redfield on Wills, 538; 1 Pomeroy's Eq. Jur. 602; 2 Story's Eq. Jur., Sec. 1111.

The principle of ademption will not apply, nor the presumption of satisfaction arise, where the bequest to the child is of a residue, or of some portion of the residue, in which case it is not regarded as a portion. A residue is always changing. 2 Redfield on Wills, 539.

"No presumption of an intention to adeem arises where the bequest is of a residuum or of an interest therein, and this

because a residuum or an interest therein can never be regarded as a portion, strictly speaking, inasmuch as the amount is necessarily of an uncertain character, and hence the presumption against double portions does not arise." Allen v. Allen, *supra;* Farnham v. Phillips, 2 Ark. 215 ; Freemantle v. Banks, 5 Ves. 85.

Mr. S. H. BLANE, for appellee.

Under the law of "ademption," as laid down by the authorities, appellant's legacy or bequest under the will had been "adeemed" or satisfied by the testator by the subsequent gift to appellant of the $2,716. Pomeroy's Equity Jurisprudence, Vol. 1, Sec. 553 *et seq.*

"Where a parent gives a legacy to a child, not stating the purpose with reference to which he gives it, the court understands him as giving a portion; and, by a sort of artificial rule, upon an artificial notion, and a sort of feeling upon what is called a leaning against double portions—if the father afterward advances a portion on the marriage of that child, though of less amount, it is a satisfaction of the whole or in part." See also Story's Eq. Jur., 2d Vol., Secs. 1110 to 1118 inclusive.

If the ground taken by appellant's counsel, that in order to support a promise to pay a disputed claim such claim should be sustainable at law or in equity, be correct, it would not sustain the ground of defense in this case, because there existed in favor of the payee of the notes a sustainable claim in equity; but we do not think the position tenable, nor in accordance with the decisions of our Supreme Court. "The compromise of a doubtful right is a sufficient consideration for a promise; and it is immaterial on whose side the right ultimately turns out to be, as it must always be on one side or the other, because there can be but one good right to the same thing." McKinley v. Watkins, 13 Ill. 140; Miller et al. v. Hawker, 66 Ill. 185; Honeyman v. Jarvis, 79 Ill. 319; Bond v. Coats, 16 Ind. 202; Chitty on Contracts, 5th Ed., p. 29; Chitty on Contracts, 5th Ed., p. 44; Zane v. Zane, 6 Munf. 406; Hindert v. Schneider, 4 Ill. App. 203.

In the case of Zane v. Zane, *supra*, the court say: "The compromise of doubtful and conflicting rights and claims, and the settlement of boundaries, is not only a good consideration to uphold an agreement, but is highly favored in law."

WALL, P. J. This was an action of assumpsit by appellee against appellant upon two promissory notes. The defense interposed was want of consideration. The case was tried by the court, a jury being waived, and there was judgment for the plaintiff, from which an appeal is prosecuted to this court.

The principal facts disclosed by the proof are that the appellant, the appellee and Prettyman Knowles were the sons of Marvel Knowles; that the latter, who resided in Indiana, held promissory notes signed by the appellant, amounting to $2,700; that in April, 1882, an agreement between appellant and his father was entered into by which the latter surrendered these notes to the appellant and he, the appellant, executed a written instrument by which, in consideration of the cancellation of said notes, he released all interest he might have in the estate, real or personal, of his father.

Previous to this date the father had made his will, by which he gave the main part of his property, real and personal, to his said three sons. This will he never changed, notwithstanding the release executed by appellant, and he died in July, 1883, leaving it as his last testament. Soon after his death, the appellant made the claim that under the will he was entitled to one-third of the lands left by his father, in Indiana, and after some discussion of the matter his brothers were induced to make him a deed therefor in recognition of the claim. Shortly after, it was discovered that the deed did not properly describe the lands, whereupon appellant conveyed back to his brothers, and the latter then conveyed to him the land by a correct description; but before this last deed was made, appellant having set up a claim to a share of the personal estate, the question was agitated as to his liability upon the old notes surrendered to him when he executed the release above mentioned.

Appellant was invited to the house of Mr. Lowe, who was an attorney for the brothers, Hiram and Prettyman, where he

remained from four o'clock in the afternoon until three o'clock the next morning.

The conference resulted in his giving the notes in suit with others, in all amounting to $1,800.

He insists that he was overeached by the attorneys of his brothers; that he was made to believe if he claimed one-third of the estate under the will he would be compelled to pay the $2,700 which he owed his father, and that suit would be brought against him on that liability if he did not adjust the matter. His testimony as to what occurred at that time is uncontradicted. Assuming this statement to be true, the question is whether there was such a want of consideration as to render these notes invalid for that cause.

The giving of the notes in suit was evidently a settlement of the whole controversy in regard to the estate, and another deed was executed by Hiram and Prettyman for one-third of the lands, which deed contained also the following provision : " And it is agreed by the grantors that they, as heirs of Marvel Knowles, hereby release the grantee from all obligations and release which said Riley Knowles incurred and referred to in a certain release executed by him to the said Marvel Knowles on the 2d day of May, 1882."

It is quite certain that there was a dispute and serious controversy as to the right of appellant to take under the will after he had received a cancellation of his notes of $2,700 and released his claim upon his father's estate.

No doubt the testator supposed, whether correctly or not, that, holding this release, it was unnecessary to change or modify his will to conform to the understanding then arrived at, and it was clearly and palpably inequitable for appellant, under the circumstances, to insist upon taking under the will without accounting for the notes which had been surrendered to him. We are not advised what might or might not have been the result of the litigation in the State of Indiana, nor do we feel called upon to determine what would have been the result of such a controversy in the State of Illinois. There was a moral obligation, if nothing more, resting upon appellant to make good the $2,700 if he participated in the

estate, and there was such substantial ground of controversy upon common law principles that he or any man might well have considered it very doubtful whether he would not finally be required to meet the demand thus asserted by his brothers, and in such case he may well have considered it the part of wisdom to make an equitable adjustment of the matter, thus ending amicably what might have been a bitter and losing contest.

The doctrine of ademption was perhaps, if not probably, applicable so far as the personal estate is concerned, and how much there was of that does not clearly appear.

We can not see that any fraud or duress was employed to induce the making of this settlement. Appellant was not misled in supposing that the advice and arguments of the attorneys were at all disinterested, for he knew these attorneys were representing his brothers. In dealing with them he could not regard them as his advisers; he and they stood at arms' length, and he saw fit to use his own judgment in refuting or conceding their arguments. It was his privilege to withdraw and take legal advice from those who were not in the employ of his adversary, but he did not choose to do so. He had confidence in his own capacity to determine what was best to be done, and he does not pretend that he was in anywise deceived as to the facts.

He claims merely that in a cause where he constituted himself a judge he mistook the law and erroneously decided against his own rights. It is unnecessary to refer to the many authorities that are in point, and we cite only the case of Honeyman v. Jarvis, 79 Ill. 318, where the subject is thoroughly discussed. The principles there stated furnish ample ground for the position of appellee that there was a valid consideration for the notes now sued upon. It was there said that the compromise of a doubtful right, though it should afterward turn out the right was on the other side, where there is no fraud and the parties act in good faith with full knowledge of the facts, is a sufficient consideration for a promise, and, quoting from Chitty on Contracts, "the real consideration which each party receives under a compromise

Knowles v. Knowles.

being not the sacrifice of the right but the settlement of the dispute and the abandonment of the claim, it is no objection to the validity of the transaction that the right was really in one of the parties and that the other had no right whatever. The fact that one may have had no claim is immaterial if he was honestly mistaken as to his claim."

It is manifest that the validity of the settlement can not depend upon the accuracy of the conclusion reached by the parties. The right must always be on one side or the other, and therefore the compromise of a doubtful right is a sufficient foundation for an agreement. Otherwise, the agreement would stand only in case it should be ultimately decided that it correctly settled the rights involved, and the making of a compromise would be work in vain—merely child's play, settling nothing.

The first question, therefore, in such cases, must be whether there was such a controversy as that it might properly be said there was a doubtful right. If there was, and it was adjusted by the parties without fraud and upon a full knowledge of the facts, it ought to stand as the parties fixed it. We find no occasion to dissent from the conclusion reached by the trial court as to the facts.

Complaint is made that the court refused to hold propositions Nos. 6 and 7 offered by appellant. In the view we take of the case these propositions were inapt and imperfect in their assumed statement of the issues raised by the proof, and it would have shed no light upon the subject to have held them; hence it was no error to refuse them. The judgment will be affirmed.

*Judgment affirmed.*