(November 10, 1897.)

## VANE v. TOWLE.

[50 Pac. 1004.]

SUFFICIENT CONSIDERATION TO SUPPORT AN AGREEMENT.—While the compromise of a claim asserted upon the one side, but questioned upon the other, will be deemed a sufficient consideration to support an agreement to pay such claim, it is still essential that the claim so asserted should have some basis upon principles of law or equity. Where one under the influence of threats or persuasion, and for the purpose of avoiding a present or threatened embarrassment, agrees to pay or recognize a claim which has no foundation either in equity or law, such agreement is without consideration and void.

UNDERTAKING ON APPEAL—WHEN SUFFICIENT.—An undertaking on appeal which specifically recites that the appeal is from both the judgment and the order overruling the motion for a new trial, and obligates the sureties to pay the penalty in the event of a judgment against the appellants or the dismissal of the appeals is sufficient under the statutes of Idaho.

(Syllabus by the court.)

APPEAL from District Court, Kootenai County.

Charles L. Heitman, for Appellants.

The main contention of appellants is that the contract made on April 19, 1894, by the respondent and R. I. Towle representing appellants, and upon which this action is brought, is wholly without consideration, and that respondent in securing said contract violated his duty as trustee for the Newport Mill Company and took unconscionable advantage of appellants who were, as the first preferred creditors of said Newport Mill Company, beneficiaries of said trust, which it was respondent's duty to execute according to the terms of the agreement of July 28, 1893. Absolute and most scrupulous good faith is the very essence of the trustee's obligation. The first and principal duty arising from this fiduciary relation is to act in all matters of the trust wholly for the benefit of the beneficiary. (2 Pomeroy's Equity Jurisprudence, sec. 1075; 27 Am. & Eng. Ency. of Law, 191.) A trustee, in dealing with his *cestui que trust,* or in the management of the trust estate, must always show *uberrima fides.* He must never lose sight of the fact that he is acting for another who is the real beneficiary; and no thought or hope or purpose of personal advantage can have part in the motive for or in the result of his act. (Perry on Trusts, sec.

427; *Bound v. South Carolina R. R. Co.,* 50 Fed. 854; note to *Read v. Patterson,* 6 Am. St. Rep. 885.) It is alleged, admitted and proven without conflict that respondent was trustee of the Newport Mill Company. Neither the promise to do a thing, nor that actual doing of it, will be a good consideration if it is a thing which the party is bound to do by the general law or by a subsisting contract. (Pollock on Contracts, 161.) Nor is the performance of that which the party was under a previous valid legal obligation to do a sufficient consideration for a new contract. (2 Parsons on Contracts, 437.) The performance of an act which the party is under a legal obligation to perform cannot constitute a consideration for a new contract. (*Robinson v. Hawes,* 56 Mich. 135, 22 N. W. 224; *Bartlett v. Wyman,* 14 Johns. 260; *Crosby v. Wood,* 6 N. Y. 369.) Appellants admit that, under ordinary circumstances, and where no relation of trust or confidence exists, the compromise or settlement of a *bona fide* controversy or disputed claim in order to avoid litigation is a sufficient consideration to support a contract, but appellants contend that none of the elements necessary to constitute a valid and binding agreement are found in the contract upon which this action is based. The alleged claim of respondent against the Newport Mill Company as against appellant's preferred claim was without foundation or merit. (*Duck v. Antle,* 5 Okla. 152, 47 Pac. 1057; *McKinley v. Watkins,* 13 Ill. 140; *Long v. Towl,* 42 Mo. 545, 97 Am. Dec. 355.) If each appeal be recited or referred to, and the undertaking be of sufficient amount, all the appeals will be rendered effectual. (Hayne on New Trial and Appeal, 645; *Granger v. Robinson,* 114 Cal. 631, 46 Pac. 604; *Watkins v. Morris,* 14 Mont. 354, 36 Pac. 452.)

R. E. McFarland, for Respondent.

Was there a sufficient consideration for the execution of this contract? It is admitted by both parties that it was executed to avoid litigation. This in law has always been considered sufficient. (*McClure v. McClure,* 100 Cal. 339, 34 Pac. 822; *Swem v. Green,* 9 Colo. 358, 12 Pac. 202.) It is held in *Curry v. Davis,* 44 Ala. 281, that where a creditor and his debtor entertain doubts of the validity of a debt, and make an honest compromise of it, a note given by the debtor for the compro-

mise sum agreed upon cannot be contested as lacking consideration. (See, also, *Honeyman v. Jarvis,* 79 Ill. 322; *Hanley v. Noyes,* 35 Minn. 174, 28 N. W. 189; *Zimmer v. Becker,* 66 Wis. 527, 29 N. W. 228, and note; *Northern Liberty Market Co. v. Kelley,* 113 U. S. 199, 5 Sup. Ct. Rep. 422.)

HUSTON, J.—On the twenty-eighth day of July, 1893, one J. L. Brace was the owner of a sawmill situated at or near the town of Newport, Idaho. It appears from the record that said Brace had, in the running of said mill, become embarrassed financially, which condition involved certain claims of persons theretofore employees of the said Brace. For the purpose of adjusting existing differences and providing for the further utilization of the product of said mill property, on the 28th of July, 1893, the said L. J. Brace made the following agreement, signed by himself alone, but accepted and acted on by the respondent, William Vane:

"Newport, Idaho, July 28th, 1893.

"Know all men by these presents that I appoint William Vane, of Newport, Idaho, as receiver for me, to run my mill, and to buy timber for the same, and to sell all the lumber cut by said mill; and I authorize him to pay all bills such as are contracted by him in said receivership, and to pay for provisions and labor, out of said mill and product. Also I agree not to hold said William Vane responsible for any accident of whatsoever nature to said mill while in his charge. And when, at such time all bills for labor and supplies for said mill are paid, the said receivership of William Vane will expire. I also further agree that I have nothing further to do with said mill, which is situate on the townsite of Newport, Idaho, nor interfere in any way whatsoever with William Vane, until such time as all bills contracted for provisions and labor are paid; also to pay any bills for goods got from Mr. Towle since the mill came to Newport, and all labor bills now due and contracted since the mill was removed to Newport, Idaho. All bills to be paid out of the sale of lumber. Coupon No. 1 forms a part of this contract. In witness hereof I sign my seal.

"L. J. BRACE.

"Witness: HARRY G. BRACE."

Coupon No. 1, above referred to, is as follows:

"Coupon No. 1.

"This forms a part of the receivership contract between L. J. Brace and William Vane. In any services rendered by William Vane while receiver for mill at Newport for L. J. Brace the said William Vane will be paid for such time that he actually puts in, and the price of such time will be set—or the value of the services will be computed—by three disinterested parties who live in the town of Newport, and their award will be final to all parties concerned."

"L. J. BRACE.

"Witness: HARRY BRACE."

On the same date (July 28, 1893) the respondent made the following contract or agreement with the parties named therein:

"Newport, Idaho, July 28th, 1893.

"We, the undersigned, agree with William Vane to work and run the Brace Mill, in Newport, Idaho, on the following terms, to wit: That William Vane sells all the product of said mill, and from the proceeds of said product we receive our wages; but we agree that the costs of the provisions, etc., that may be necessary to be purchased to run the boarding-house connected with said mill, and horse feed, and any other feed and provision bills, will be first paid out of the first moneys arising from said sales. Also it is understood that William Vane holds the mill and all the cut from said mill until such time as all the feed and provision and labor bills are paid. And it is further understood that J. L. Brace has no interest in said mill until such time as all the agreements here mentioned are fulfilled. It is understood by all parties herein concerned that the wage or labor bills are only the ones accrued since the mill was removed to Newport, Idaho, and contracted there; and the rotation that bills are to be paid are as follows: 1st to be paid is provision bills; 2d, price of lumber for mill; 3d, labor in mill from above date; 4th, old labor bills. It is agreed hereto that Harry Brace look after his father's interest in said mill, and has free access in said premises or mill at any time; and if he sees that anything is mismanaged, he can report to Wm. Vane said mismanagement, and have it adjusted. It is agreed that, if any man leaves, he can have, on demand, his bill in full in lumber.

The price of lumber is to be so he can put it on the market
at market prices there.    Further, that we, each and all of us,
have no interest in said mill and product but such as herein
mentioned.                              F. M. BEARD.
                          "AUGUST LAARTZ.
                          "ELI ETHIER.
                          "JOHN ERSKINE.
                          "J. BREAKREAGE.
                          "JOHN W. HORTON.
                          "HARRY G. BRACE."

The respondent, although he did not sign the last contract
or agreement, accepted it, and under it superintended the busi-
ness for several months, during which time an indebtedness was
incurred by the mill company to appellants of some $700 or
$800, for the recovery of which the appellants, on March 27,
1894, brought suit in the district court of said Kootenai county,
which action resulted in a verdict and judgment in favor of
the plaintiffs in said action (appellants here) for the sum of
$788.35, and costs taxed at $208.70.    Upon the judgment so
recovered an execution was issued, and levied upon certain per-
sonal property belonging to, or claimed to be owned by, the de-
fendants in said execution.    On the day of the sale under the
said execution the plaintiff    (respondent)    appeared and pre-
sented a claim, which he insisted was prior to, and entitled to
precedence over, the judgment of appellants.    This claim so
presented by respondent was for services as receiver or agent
under his appointment by L. J. Brace, and for expenditures
made by him as such receiver or agent.    It seems that, for the
purpose of preventing any interruption of the sale, or avoiding
a continuance thereof, the appellants, upon the insistence of re-
spondent, made with him the following agreement:

                    "Newport, Idaho, 19th of April, 1894.
"This is to certify that we, the undersigned G. C. Towle &
Co. and William Vane, all of the town of Newport, Idaho, do
hereby agree to prorate in our respective acc'ts against the New-
port Mill Company in the following manner, to wit: As the
sum of $700, the account of William Vane, is to the sum of
fifteen hundred dollars, the acc'ts and disbursements of G. C.
Towle & Co., we each of us agree that upon the payment of

the sum of four hundred dollars to William Vane that the pro-rate ceases, and all the residue goes to G. C. Towle & Co., and it is optional to either which they will take or pay—the one for the prorate or the one for the four hundred dollars. The prorate agreement includes all the assets of every shape and form in the hands of William Vane, and the lumber in the yard at Newport of the Newport Mill Company. Prorate plan accepted by both parties later. The timber to be in the hands of G. C. Towle & Co., and the other assets in the hands of William Vane, for disposition.             WILLIAM VANE.

"G. C. TOWLE & CO."

It appears from the record that the claim upon which appellants recovered judgment against the Newport Mill Company was for a balance due appellants from said company for provisions and supplies furnished said company by appellants under the contract or agreement between respondent and said mill company of July 28, 1893. Respondent claimed that his account for services as receiver or agent of Brace had precedence over the judgment of appellants. There does not appear to have been any contractual or other relations between appellants and respondent. It does not appear that appellants gave credit to the Newport Mill Company under the agreement of July 28, 1893, by the terms whereof appellants' claim was to be first paid out of the product of said mill. And it may well be presumed that it was upon this theory that recovery was had by the appellants. The respondent was not a party to the action which resulted in a judgment for the appellants against the Newport Mill Company.

It will appear that the sole question involved in this case is the right of respondent to recover from the appellants upon the agreement of April 19, 1894. Respondent claims that the said agreement was a compromise of a *bona fide* claim made upon "probable cause," and cites, in support of his contention, *Honeyman v. Jarvis,* 79 Ill. 318. The rule of that decision was that "the compromise of a doubtful right, though it afterward turns out the right is on the other side, where there is neither actual nor constructive fraud, and the parties act in good faith, with a full knowledge of the facts, is a sufficient consideration

to support a promise." That rule could have no application in this case. The appellants had sued for a balance of account due them from the Newport Mill Company, and under the contract between said company and the respondent appellants were to be first paid out of the proceeds derived from the product of the mill. If respondent had any claim which, under the contract between himself as agent or receiver of Brace, the owner of the mill, and the Newport Mill Company, was entitled to precedence, it would seem that the proper time for him to assert such claims was when appellants brought their action against the mill company, which he could have done by intervention; the record showing that he was fully aware of the pendency of said action. He did not do so. We do not think the claim presented by respondent at the time of the sale, and which was the predicate upon which the agreement upon which this action is brought, came within the rule as given in *Honeyman v. Jarvis, supra.* The claim of respondent was not such a one as could be maintained against appellants. The claim of respondent arose upon his agreement with Brace, the owner of the mill. Neither the appellants nor the Newport Mill Company were parties to or privies in such contract. There could be no legal or moral obligation upon the part of the appellants, under the facts developed by the record, to pay the claim of the respondent. They were not, nor could they be made, responsible for the claim of respondent. A compromise presupposes a claim with at least some shadow of legality or equity to support it; neither of which existed in this case. It was simply an assertion upon one side and ignorance or timidity, or both, on the other.

We have carefully examined the cases cited by counsel for respondent, and find nothing therein conflicting with the conclusion we have reached. In *May v. Coffin,* 4 Mass. 341, which was an action by an indorsee against the indorser, the court says: "But it is said that there is evidence in this case sufficient, if the jury believed it, to establish the facts that the defendant had waived an objection, which he might otherwise have had, to the plaintiff's right to recover, and had promised to pay the money. What a man says under the surprise of a sudden and unexpected demand for money ought to be construed with a good deal of strictness, and in this case we are all satisfied that

what the defendant said of paying money from the payment of which he was discharged by law ought not to bind him. There was, in fact, no consideration for the promise." In *Warder v. Tucker*, 7 Mass. 449, 5 Am. Dec. 62, the court says (we quote from the syllabus) : "Where one, through a mistake of the law, acknowledges himself under an obligation which the law will not impose upon him, he shall not be bound thereby." (See, also, *Freeman v. Boynton*, 7 Mass. 483; *Stoddard v. Mix*, 14 Conn. 111; 1 Parsons on Contracts, 5th ed., 437.) In the case at bar there was neither a legal nor equitable claim against the appellants. Their agreement of April 19, 1894, was, in our opinion, entirely without consideration.

Respondent filed a motion to dismiss the appeal in the case for want of a sufficient undertaking. The undertaking recites both appeals, that from the judgment and that from the order denying the motion for a new trial, and is as follows, to wit:

"Whereas, the defendants in the above-entitled action have appealed to the supreme court of the state of Idaho, from a judgment, made, entered and rendered against them in said action in the district court of the first judicial district of the state of Idaho, in and for the county of Kootenai, in favor of the plaintiff in said action, on the thirteenth day of April, 1896, for three hundred and eighty-one (381.00) dollars and twenty-five (25.00) dollars, costs of suit, and from the whole of said judgment; and, whereas, the said defendants have also appealed from the order of the district court denying and overruling the said defendants' motion for a new trial herein, made and dated on the fifteenth day of December, 1896, and filed in said cause on said date, and from the whole of said order: Now, therefore, in consideration of the premises and of the said appeals, to wit, the appeal from the judgment so made, rendered and entered on the thirteenth day of April, 1896, and the appeal from the order refusing the defendants a new trial, made, dated and filed herein on the fifteenth day of December, 1896, we, the undersigned, residents, householders and property owners of and in the county of Kootenai, state of Idaho, do hereby jointly and severally undertake and promise on the part of the said defendants and appellants, that the said defendants and appellants will pay to the said William Vane, plaintiff and respondent herein, his heirs, executors, administrators or assigns,

all damages and costs which may be awarded against the said
defendants and appellants on the said appeals herein, to wit,
the appeal from the judgment rendered herein, and from the
said appeal from the order refusing the defendants a new trial
herein, or a dismissal thereof, not exceeding the sum of three
hundred (300.00) dollars, to which amount we acknowledge our-
selves jointly and severally bound."

Respondent filed a motion to strike out the statement on the
motion for a new trial for the reason that the same was not
filed within proper time. An examination of the record shows
that the statement was filed wthin the time fixed by the order
of the judge. The judgment of the district court is reversed,
and the cause remanded, with instructions to dismiss the com-
plaint.

Quarles, J., and Sullivan, C. J., concur.

### ON REHEARING.

QUARLES, J.—The petition for a rehearing in this case,
after alleging that the court did not understand the facts, mis-
apprehended the material facts, and misapplied the law to the
facts of the case, proceeds to argue that the claim asserted by
the respondent, and which he claims was compromised, was
based upon supplies purchased by him with his own means for
running the mill, and used in the conduct of the company busi-
ness, and therefore his claim under the contract made by the
Newport Mill Company on July 28, 1893, was of superior or
equal dignity with that of the appellants, and was a sufficient
consideration to support the agreement of April 19, 1894, be-
tween appellants and respondent. The petition proceeds to
quote from the opinion herein wherein it holds that respondent
should have intervened in the action brought by Towle & Co.
against the Newport Mill Company, and then says: "These as-
sertions on the part of the court were doubtlessly made upon
the theory that Towle & Co.'s action against the Newport Mill
Company was brought by attachment, and that the property
of the said mill company was levied upon by a writ of attach-
ment in that case prior to a rendition of the judgment therein.
But such are not the facts. The record does not show that the
property of the mill company was levied upon until after Towle
& Co. had recovered judgment against said Newport Mill Com-

pany. Towle & Co.'s action in that case was simply an action upon an account, without the aid of attachment proceedings, and Vane was not made a party thereto." All of the files and records in the case of Towle & Co. against the Newport Mill Company are not in the record before us, only the judgment-roll in that case, which does not show whether any attachment issued in that suit or not. But the record before us does show that an attachment issued in that case. The plaintiff, William Vane, while testifying as a witness in his own behalf, as appears at page 34, folio 95, of the transcript, speaks of the attachment. In this case, when the original opinion was rendered, we thought, and still think, that if the respondent had a claim antagonistic to that of the appellants, which should have been paid prior to or ratably with that of the appellants, he should have intervened in that suit, and could not stand idly by, and see the termination of that suit, see the appellants subject the assets of the said mill company to their claims by legal process, and then assert an adverse claim to those assets afterward, for the following reasons: The evidence in this case shows that the contract of July 28, 1893, was made, in part at least, for the purpose of procuring supplies from the appellants to run the mill and business of the Newport Mill Company; that this contract was shown to appellants before it was signed and after it was signed, and on the faith of its terms, and for that reason, that the respondent was to pay out of the proceeds of all lumber from the mill the claims of appellants for such supplies. Respondent Vane knew of their efforts to subject the lumber of said mill company to their claim for supplies, and failed to assert an adverse claim (so far as this record shows) until the day of sale of the lumber under execution. In his testimony Vane shows that he sold lumber, shipped lumber, etc. He nowhere shows how much he sold, or how much he realized from such sales, nor does he show any vouchers for money claimed to have been paid out in the conduct of the business, which he claims to have conducted as trustee. It is true that he says he paid out of his "own pocket" over $900 in buying supplies to run the mill during the five months that he conducted it, yet, when asked to itemize it, he testified as follows: "I advanced something

over $200 for bare groceries, and about thirty dollars (in all, about sixty dollars—near that sum), for feed, and about $167 (near that amount) for beef, and about seventy dollars and a half for oil, and about forty dollars for repairing the mill, and $102 for logs—all for the Newport Mill Company." Then he said: "There were different other bills. [There was about four dollars and a half stamps, paper, and envelopes. [There was vegetables, between thirty and forty dollars. I advanced this money between the twenty-eighth day of July up until the mill closed down, which was between the 28th of July and some time in December, 1893." Placing the items at the maximum, giving the respondent the benefit of all of the doubts and uncertainties with which his statement bristles, and his alleged claim foots up the sum of $684, instead of "over $900." Respondent was the only witness who testified in his own behalf. He failed to show whether the money he paid "out" of his "own pocket" was proceeds of lumber sold by him as trustee or his own fund, and he fails to show that, if it was his own funds, he had not been reimbursed; and, further, his reputation for truth and veracity was impeached by several witnesses. Trustees must, in dealing with trust funds and with the beneficiaries thereof, show the utmost good faith and fair dealing. They can make no profit out of the trust funds, nor obtain any advantage over the beneficiaries of such funds, and a trustee cannot assert an adverse claim to funds which he receives in his fiduciary capacity. The compensation of the trustee in this case was provided for, not through and out of the trust funds, but by a third party, to which he assented; and under these conditions he could not look to the trust funds for compensation for his services as such trustee.

Before closing, we will say that hereafter no petition for rehearing will be considered unless it is couched in respectful language; and that in drafting a petition for rehearing all attorneys should be careful to not misrepresent any fact which appears in the record. These suggestions are made with the hope that it will prevent the recurrence of evils that have appeared in several petitions for rehearing in the past. A rehearing is denied.

Sullivan, C. J., and Huston, J., concur.