**Sarah Ellen Pyle, Appellee, v. William Thomas Murphy, Appellant.**
**Mary Edith Hill, Appellee, v. William Thomas Murphy, Appellant.**
**Mary Edith Hill, Appellee, v. Margaret Abbey Midgley, Appellant.**
**Sarah Ellen Pyle, Appellee, v. Margaret Abbey Midgley, Appellant.**

1. WILLS—*unequal distribution.* Where there is no evidence of undue influence an unequal distribution of property does not itself destroy the validity of the will.

2. WILLS—*insertion of clause after execution.* A will is not destroyed by the insertion of a clause after its execution.

3. WILLS—*presumption as to change.* It is presumed that marks made upon a will are those of the testator when it was in his possession up to the time of his death.

4. WILLS—*question of fact.* It is a question of fact for the jury as to whether a testator made marks upon a will with the intention of canceling it.

5. WILLS—*intent to cancel.* Marks made upon a will by the testator have the effect of canceling it when made with that intent.

6. COMPROMISE AND SETTLEMENT—*consideration, when invalid.* Where a claimant in the settlement of a controversy obtains a compromise by fraud, duress, or where no legal right ever existed, or where the matters sought to be compromised are of a criminal or unlawful character, then the consideration is unlawful and cannot be enforced.

7. COMPROMISE AND SETTLEMENT—*of a doubtful right.* The compromise of a doubtful right where there is neither actual nor con-

structive fraud and the parties act in good faith is sufficient consideration to support a promise.

8. COMPROMISE AND SETTLEMENT — *consideration, when valid.* Where a controversy that may be determined at law is compromised and settled in good faith and without fraud or oppression, such settlement constitutes a good consideration for the promise to pay money or other valuable thing.

9. EVIDENCE—*as to ground for contesting a will.* In an action to enforce a settlement made in good faith between legatees who disputed the validity of a will it is proper to exclude evidence offered by defendants tending to show that no valid ground existed that would authorize a contest.

10. COMPROMISE AND SETTLEMENT—*where dispute among legatees is compromised.* Where legatees claim the right to contest a will on account of unequal distribution, its mutilated condition, and undue influence over the testator in its execution, and a settlement is reached with other legatees in good faith, the latter cannot question the consideration after the year in which to file a contest has elapsed.

Appeal from the Circuit Court of St. Clair county; the Hon. WILLIAM E. HADLEY, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed March 10, 1913.

R. D. W. HOLDER and SCHAEFER & KRUGER, for appellants.

BARTHEL, FARMER & KLINGEL, for appellees.

MR. PRESIDING JUSTICE McBRIDE delivered the opinion of the court.

The above entitled causes were consolidated and tried as one case by the Circuit Court, without a jury. Judgment was rendered against the defendant in each of the cases, from which judgment the defendants respectively appeal and it was agreed that the appeals in said causes shall be consolidated in the Appellate Court and treated as one cause, and that the Appellate Court should enter separate judgments in each of said causes.

The declaration was substantially the same in each case, and avers that David Murphy, now deceased, in and by his last will and testament, gave to William

Thomas Murphy the sum of $10,000; to Margaret Abbey Midgley the sum of $2,500; Mary Edith Hill the sum of $2,500; Sarah Ellen Pyle the sum of $2,500; and it was pretended by the defendant that in and by said last will and testament one Amos M. Midgley was devised the sum of $7,500. That the provisions of said will were by the several plaintiffs considered inequitable; that said will had been mutilated and marked, the provision for the said Amos M. Midgley crossed out, cancelled and annulled and on April 26, 1909, and before said will was probated, the plaintiffs proposed to contest the validity thereof and that the said William Thomas Murphy and Margaret Abbey Midgley in consideration that the several plaintiffs would not contest the validity of said will then and there entered into a written agreement as follows:

"Whereas on the 26th day of March, A. D. 1909, David Murphy departed this life testate and in his will did devise to the parties hereto as follows:

To William Thomas Murphy, ten thousand dollars.

To Margaret Abbey Midgley, twenty-five hundred dollars.

To Mary Edith Hill, twenty-five hundred dollars.

To Sarah Ellen Pyle, twenty-five hundred dollars.

And, whereas, said devises are not in equal amounts; now therefore in order to avoid any dissatisfaction among us and to avoid any litigation in a contest of the last will and testament of the said David Murphy, deceased, and in the interest of friendship and good will towards each other, the said Margaret Abbey Midgley hereby agrees to pay to her two sisters Mary Edith Hill and Sarah Ellen Pyle in equal shares whatever amount she may receive as her share of said estate under said will; and the said Mary Edith Hill and the said Sarah Ellen Pyle agree to accept the same in full satisfaction, settlement and compromise of any other right or interest they might have in any way in the said estate; and the said William Thomas Murphy agrees to pay to said Mary Edith Hill and Sarah Ellen

Pyle the same amount as is paid them by the said Margaret Abbey Midgley as her share of said estate, and the said Mary Edith Hill and Sarah Ellen Pyle each agree to accept the same from him in the same manner as from the said Margaret Abbey Midgley.''

The declaration then avers that said will was not contested but was admitted to probate, the executor named proceeded to administer upon the estate and filed final settlement and made distribution of said estate according to the provisions of said will. That Margaret Abbey Midgley received from the estate of David Murphy $2,348.71, and that the said William Thomas Murphy received his portion of said estate, as provided for by said will and that thereby the said William Thomas Murphy became liable to pay the plaintiff the sum of $1,074.35 on to-wit March 11, 1912, according to the tenor and effect of said agreement.

To each of these declarations the defendants filed a plea of general issue, and it was stipulated that under this plea any proper evidence tending to prove want of consideration could be introduced. The causes were tried by the Circuit Court by consent and without the intervention of a jury and judgment rendered for each of the plaintiffs.

The will was offered in evidence. By the first provision it was directed that the testator's debts and funeral expenses be paid. The second provision gave to his wife $3,000 and other property. The third provision gave to his son, William Thomas Murphy, the sum of $10,000 in money. The fourth provision gave to Amos M. Midgley the sum of $7,500 in money; the fifth provision gave to Margaret Abbey Midgley the sum of $2,500; the sixth provision gave to Mary Edith Hill $2,500; the seventh provision gave to Sarah Ellen Pyle the sum of $2,500; and the eighth provision provided for an equal distribution of the amount due the deceased from his sister's estate. The ninth gave the residue of the estate to his son William Thomas Murphy and grandson Amos Midgley in equal shares and

appointed William Thomas Murphy executor without bond. After the making of said agreement the will was admitted to probate. The final settlement of the estate, after the payment of claims, shows a total amount of $20,095.70 for distribution in said estate exclusive of the amount received from the sister of the deceased. This reduced the bequests mentioned in the will and gave to William Thomas Murphy $8,038.28; Amos Midgley $6,028.71; Margaret Abbey Midgley $2,009.57; Mary Edith Hill $2,009.57; Sarah Ellen Pyle, $2,009.57.

The will was typewritten and the fourth clause thereof was erased by pencil lines being drawn back and forth over the provision of this item and in the same manner there was erased in the latter part of section nine, the words "My grandson Amos M. Midgley in equal shares." The will was kept in a box with other papers owned by the deceased and was not under lock and key. At the time of the execution of the will, the deceased, David Murphy, went alone to the office of L. D. Turner, an attorney, who prepared the will, and no one was in the office at the time it was written. The deceased was about seventy-five years old at the time of his death and the will was prepared a short time prior thereto. On Sunday afternoon after the death of David Murphy, the plaintiffs and defendants met for the purpose of hearing the will read. William Thomas Murphy brought out the will and it was read by Mr. Turner, and at that time it was discovered that these pencil scratches were upon the will. The question of unequal provisions of the will was at that time discussed and Mrs. Midgley stated she was sorry the property was not divided equally and they would try and make it right, which seems to be all that was said about it at that time. On the morning of the day set for probating the will the parties met at the office of Mr. Turner and the question of contesting the will by the plaintiffs was then threatened by them and discussed, and as claimed by the plaintiffs they were about to leave the office for the purpose of entering suit to con-

test the will when they were called back by the defendants and the foregoing agreement entered into, which was very beneficial to the son of Margaret Abbey Midgley who undoubtedly would have been deprived of the legacy of $7,500 if the will had not been sustained and probated.

As plaintiffs claim (and not denied by the defendants) there was no notice given by the defendants of their intention not to comply with the terms of this agreement until after the expiration of one year from the date of the probate of the will. It is claimed by the plaintiffs that they had at that time been informed that undue influence had been exerted upon the testator to procure the making of the will and that they in good faith threatened and intended to contest the will.

It is contended by counsel for appellants, first—that there was no good and valuable consideration upon behalf of the appellants for the execution and delivery of the contract sued upon in each of these causes; and, second—that as a matter of law the will of David Murphy, deceased, was not reasonably subject to contest and not of doubtful validity. It is insisted by counsel for appellants that they were entitled to show upon the trial of these suits in the Circuit Court that there was nothing surrounding the making of this will, the condition of the testator or other infirmities to render the will of doubtful validity, and such conditions being shown, the making of the contract in question was without consideration and the promises to pay therein specified void.

Authorities are cited showing that an unequal distribution of property would not itself destroy the validity of the will without some evidence of undue influence, and that the insertion of a clause in the will after its execution without proper attestation would not destroy the will; which seems to be the true rule. The will in this case, however, seems to have been in the possession and under the control of the testator up to the time of his death, and the presumption, as

we think, would be that the marks made upon the will would have been those of the testator, and it would be in all probability a question of fact to be determined by a jury whether or not those marks were made with the intent of cancelling the will, and if he made such marks with such intent the effect of it under our statute would be to cancel the instrument. *Marshall v. Coleman,* 187 Ill. 579.

In this case, however, it appears from the evidence that there was much dissatisfaction over the terms of the will and that the plaintiffs in good faith believed that the will was not the genuine will of their father, and were determined to contest it and this controversy resulted in the making of the agreement offered in evidence. We think the real qustion here is, when does the settlement of a controversy constitute a good consideration for the obligation incurred in the making of such settlement? It is strenuously insisted by counsel for appellants that, "if, however, the party making the claim has no right at all then there is no consideration for the compromises." If this proposition is confined to a legal right without reference to an investigation of the facts for the purpose of determining whether such right exists or not, then counsel is quite correct, but if the result is to depend upon what the facts in the particular case develop and no fraud or bad faith is shown to exist, then we think the position assumed is not a correct statement of the law as laid down by the more recent principles announced by our own Supreme Court. If a claimant in the settlement of a controversy obtains a compromise by fraud, duress or where no legal right ever existed for lack or incapacity of the party to sue, or otherwise, or where the matters sought to be compromised are of a criminal or unlawful character, then the consideration for any such compromise, whether the proof of such facts were for or against the claimant, would be unlawful and could not be enforced.

Many cases have been cited by counsel for appellants and appellees in behalf of the position assumed

by them respectively, and we think that the most of them are in harmony with the doctrine above announced. In many of the cases cited and relied upon by counsel for appellants it will be found that fraud, want of good faith, duress, want of capacity or right to sue, illegality of the matters compromised enter into and form the basis, in whole or in part, of the consideration for the promises sought to be enforced, and was held to be insufficient to support a consideration. The case of *Mulholland v. Bartlett,* 74 Ill. 58, presents with as great force the doctrine contended for by appellants as any case to which we have been referred, but upon a careful reading of this case it will be observed that the illegality of the contract was based upon the fact that the obligor was at that time among strangers and threatened by a mercantile house of high standing, and to relieve himself from embarrassment he executed the writing in question, and the court also says in that case: "It seems to us quite clear here was no compromise of a doubtful claim, but a wrongful assertion of a claim, which appellant, when the instrument was executed, had strong reasons for believing had no valid existence as against the appellee. Circumstances very much affect cases. Appellee was among strangers, threatened by a mercantile house of high standing, who, to relieve himself from the embarrassment of his position, executed this writing, there being at the time no ground whatever in law or equity to charge him with this debt;" and while the language of a portion of this opinion is very strong in support of appellant's contention, yet when the circumstances surrounding the transaction are considered we do not believe that this authority should control in the decision of the case at bar.

The case of *Heaps v. Dunham,* 95 Ill. 583, referred to by counsel for appellant and appellee, fully recognizes the right to sue upon a promise made in compromising a claim where the obligee had the right to bring the action, even though the facts did not justify such action and distinguishes this from a case where

no right of action at all existed. Heaps gave cash and notes amounting together to $1,050 in compromise of two threatened suits, one for bastardy and the other for seduction; he afterwards brought suit to enjoin the sale and collection of the notes. The court held that while there was great doubt as to the girl's pregnancy, Heaps was concluded by his settlement as to that question, and the notes given in settlement of the bastardy charge were not enjoined but were held valid. The court, however, further held that as the girl was a minor, cause for seduction against Heaps belonged to her parent and not to her and that she could neither bring nor compromise such action, therefore that portion of the notes representing the compromise of the action for seduction was without consideration. We think the true rule is, that where there is a controversy between parties that may be determined at law, and such parties compromise and settle such controversy in good faith and without fraud or oppression, that such setlement constitutes a good consideration for the promise to pay money or other valuable thing, and this doctrine is well sustained by many decisions of our Supreme and Appellate Courts.

"Where a claim is asserted by one party against another, if the party making the claim honestly supposes that he has a good cause of action, compromise and satisfaction of the right asserted is a sufficient consideration to uphold a contract fairly entered into, even if, in fact, his claim could not have been enforced, either in whole or in part, at law or in equity. 'The compromise of a doubtful right, where there is neither actual nor constructive fraud and the parties act in good faith, is sufficient consideration to support a promise.'" *Walker v. Shepard,* 210 Ill. 112; *McKinley v. Watkins,* 13 Ill. 140; *Honeyman v. Jarvis,* 79 Ill. 318; *Adams v. Crown Coal & Tow Co.,* 198 Ill. 445.

It is not claimed in this case that there was any fraud, want of good faith or oppression in the settlement reached, and this being true we think the settlement of the contest and of a family difference without

reference to the merits of the controversy would constitute a good consideration. The appellees, to say the least of it, claimed some rights by reason of the unequal distribution, the mutilated condition, and as they say, the undue influence over the testator in the execution of the will. The appellants by the making of the settlement conceded that appellees had some rights that should be respected, and that there were, to say the least of it, possibly some infirmities about the will because of its erasures, unequal distribution or otherwise and for that reason were willing to make a settlement and end the controversy, and whether such matters in fact existed or not we think it immaterial; the appellants were of age, sound in mind and knew all of the conditions and surroundings of the making and caring for the will as well as any one and they should, not, after permitting the year in which to file a contest of the will to elapse, be permitted to say no cause existed for the contesting of the will.

From the conclusions above reached, it follows that the court properly excluded the evidence offered by appellants tending to show that no valid ground existed that would authorize a contest of the will or that could have resulted beneficially to the plaintiffs in such contest; and the holding of the court upon the propositions of law submitted by counsel for appellants were in accordance with the conclusions here reached, and proper.

It is also insisted that the action against William Thomas Murphy was prematurely brought. It was determined by the trial court that the spirit and meaning of this agreement was, that William Thomas Murphy should be liable for the same amount that the settlement of the estate proved to be due and owing to Margaret Abbey Midgley and we have no reason to find fault with the conclusion reached by the Circuit Court upon this question, and the judgment in each of the above entitled causes is affirmed.

*Affirmed.*