No. 2--05--0848                                      filed: 7/28/06

_____

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

_____

| | | |
|---|---|---|
| GERALDINE FELZAK, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 94--D--860 |
| | ) | |
| RALPH HRUBY and SONDRA HRUBY, | ) | Honorable |
| | ) | C. Stanley Austin, |
| Defendants-Appellants. | ) | Judge, Presiding. |

_____

_____

JUSTICE KAPALA delivered the opinion of the court:

Defendants, Ralph and Sondra Hruby, appeal from an August 22, 2005, order holding them in indirect civil contempt of court for failing to obey a June 15, 1995, order providing for grandparent visitation, and from a June 8, 2005, order denying their motion to dismiss plaintiff's, Geraldine Felzak's, petition to enforce the June 15, 1995, order. We affirm in part and vacate in part.

I. BACKGROUND

Ralph Hruby and Deborah Hruby were married in 1977 and had three children together: Greg, born November 25, 1983; Jeffery, born August 4, 1985; and Katie, born July 22, 1989. Shortly after Katie was born, Deborah died of a cerebral hemorrhage. On July 16, 1992, Ralph was married to Sondra Hruby. Soon after her marriage to Ralph,

Sondra adopted the Hruby children on November 1, 1993.  On April 6, 1994, plaintiff, Deborah's mother, filed a petition for grandparent visitation with the Hruby children pursuant to section 607(b) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/607(b) (West 1992)).

In her petition for grandparent visitation, plaintiff alleged that despite her continued involvement in the Hruby children's lives after the death of her daughter, defendants would no longer permit her to have visitation with the Hruby children.  Plaintiff alleged that after the death of her daughter, she provided regular care for the children, bought them clothes and shoes, and arranged birthday and holiday celebrations for them.  However, plaintiff alleged that soon after defendants married, defendants  refused to allow plaintiff visitation with the children.  In their answer, defendants claimed that during her visitation with the children, plaintiff continually made disparaging remarks to the children about Sondra, and that the visitation was harming the Hruby children and detracting from defendants' attempts to nurture and build their family.  The parties agree that plaintiff's visitation with the two boys ended on December 25, 1993.  In their answer, defendants contended that the boys did not want to visit with plaintiff and that defendants would not force the boys to continue to visit with plaintiff.  Defendants also claimed that plaintiff continued overnight visitation with Katie on alternating weekends until April 1994.  Defendants' answer to plaintiff's petition for grandparent visitation included an affirmative defense that the provisions of section 607 of the Act pertaining to grandparent visitation were unconstitutional.

On April 29, 1994, the court entered an agreed conciliation order referring the parties to Dr. Daniel Hynan for conciliation counseling on the issue of visitation.  Dr. Hynan interviewed plaintiff, defendants, and the Hruby children and administered psychological

tests.  On October 28, 1994, Dr. Hynan recommended that it was in the best interest of the children to continue visitation with plaintiff.  As a result of Dr. Hynan's recommendations, defendants decided to agree to visitation.  Before the court ruled on defendants' affirmative defense, the parties entered into an agreed order on December 16, 1994, allowing plaintiff visitation with the three Hruby children one day per month for six hours and allowing telephonic visitation with the children for up to 30 minutes once per month.  In exchange, plaintiff withdrew her claims for grandparent visitation.  As part of their agreement, the parties also provided that if disputes arose over the agreed order, they would return to counseling to mediate the dispute before submitting the dispute to a court.  The order also provided that the court retained jurisdiction to enforce the order.

On April 10, 1995, plaintiff filed a petition for further conciliation and other relief, alleging that defendants had failed to provide any visitation with Greg and Jeff pursuant to the December 16, 1994, agreed visitation order, asking that the court order the parties to return to counseling, and requesting overnight visitation with Katie.  Following a pretrial conference on April 10, 1995, the court entered an interim order allowing plaintiff to write to Greg and Jeff, and requiring defendants to encourage them to respond.  The interim order also provided that the parties should attempt to resolve overnight visitation between plaintiff and Katie.  On May 24, 1995, the court entered an order setting plaintiff's petition for hearing on August 1, 1995.

On June 15, 1995, however, plaintiff and defendants entered into an agreed order that, in lieu of the previously ordered six hours per month of visitation with the three Hruby children, allowed plaintiff to visit with Katie twice per month, between 3:30 p.m. and 8:30

p.m. on days to be agreed upon by the parties. The order further provided that plaintiff would withdraw her pending petition for conciliation and other relief.

On February 24, 2005, plaintiff filed a petition to enforce the agreed order of June 15, 1995. In that petition, plaintiff alleges that for nine years following the June 15, 1995, agreed order, she visited with Katie and Katie never missed a visit. Both parties later testified that during this time, they agreed outside of court that plaintiff would have one 10-hour visitation with Katie per month instead of two 5-hour periods, because this was more convenient for both parties. In her February 2005 petition, plaintiff alleges that in May 2004, two months before Katie's fifteenth birthday, defendants stopped plaintiff's visitation with Katie completely. Sondra Hruby testified that this was because Katie returned home crying after her April 2004 visit with plaintiff, and that Katie did not want to go on any more visits with plaintiff. Plaintiff alleges that defendants did not ask the court to modify the visitation order prior to stopping visitation and that she requested defendants to abide by the June 15, 1995, agreed order on several occasions in the months after her visitation with Katie ceased. Ralph wrote plaintiff on February 3, 2005, stating that because the Illinois grandparent visitation statute (750 ILCS 5/607(b) (West 1992)) had been found unconstitutional, he believed that the June 15, 1995, agreed order granting plaintiff visitation with Katie was void and unenforceable.

In response to plaintiff's February 24, 2005, petition to enforce the June 15, 1995, agreed order, defendants filed a motion to dismiss pursuant to section 2--619 of the Code of Civil Procedure (the Code) (735 ILCS 5/2--619 (West 2004)), which was later superseded by a May 2, 2005, amended motion to dismiss, also pursuant to section 2--619 of the Code. The amended motion to dismiss alleged that because section 607(b) of the

Act, the grandparent visitation statute upon which plaintiff brought her petition, was held unconstitutional, the court had no subject matter jurisdiction and no authority to enter the June 15, 1995, agreed order for visitation.

On June 8, 2005, the court denied defendants' amended motion to dismiss and held that the agreed order of June 15, 1995, was still in full force and effect. In denying defendants' amended motion to dismiss, the court held that this case was controlled by In re M.M.D., 213 Ill. 2d 105, 114-15 (2004), because in that case our supreme court held that agreed orders for grandparent visitation were not void as unconstitutional and should be enforced. At the time the court denied defendants' amended motion to dismiss, counsel for defendants informed the court that defendants would not abide by the order to enforce the visitation order of June 15, 1995, and requested that the court enter an order holding defendants in indirect civil contempt to enable them to appeal the question of jurisdiction. The court refused this suggestion and instructed counsel for plaintiff to prepare a petition for rule to show cause.

On June 10, 2005, plaintiff requested visitation with Katie, and on June 17, 2005, defendants informed plaintiff that they would not permit visitation. Then, on June 30, 2005, plaintiff filed a petition for a rule to show cause and other relief. In response, defendants asked the court to deny plaintiff's petition and to reconsider its June 8, 2005, denial of defendants' motion to dismiss. Defendants cited a recent Fifth District opinion, In re Marriage of Dobbs, 358 Ill. App. 3d 308, 310 (2005), which held that a court did not have subject matter jurisdiction to enter an agreed order allowing a parent visitation with his adult child. On July 6, 2005, the trial court granted plaintiff's petition for a rule to show cause and

ordered defendants to appear on August 16, 2005, to show cause as to why they should not be held in civil contempt for failing to obey the court's June 15, 1995, visitation order.

A contempt hearing was held on August 16, 2005. After hearing testimony from plaintiff and defendants, the court found defendants in willful contempt of court for failure to obey the court's order of June 15, 1995, and reasserted that M.M.D. controlled the case despite the holdings of Dobbs. The court ordered that each defendant be incarcerated on alternating weekends until defendants abide by the June 15, 1995, visitation order. The court held that defendants could purge themselves of the order of contempt by providing visitation with Katie to plaintiff for 10 hours a month to be held on one weekend day per month. The court further ordered sua sponte that neither party have any communication with Katie as to "the outcome of the Court case or any impact of that at this time." A written order holding defendants in indirect civil contempt of court was entered on August 22, 2005.

The trial court refused to stay defendants' incarceration pending this appeal, but entered a temporary stay for 30 days. On September 8, 2005, this court granted defendants' motion to stay the contempt judgment pending this appeal.

Defendants filed their notice of appeal on August 25, 2005, appealing both the trial court's August 22, 2005, order holding them in indirect civil contempt of court and forbidding communication with Katie about the case, and its June 8, 2005, order denying their motion to dismiss plaintiff's petition to enforce the June 15, 1995, order.

## II. DISCUSSION

On appeal, defendants contend that the trial court erred both when it denied their amended motion to dismiss plaintiff's petition to enforce its June 15, 1995, visitation order and when it entered its August 22, 2005, order holding defendants in indirect civil contempt

of court for failing to obey its June 15, 1995, visitation order. Defendants argue that the trial court cannot enforce the June 15, 1995, order allowing plaintiff grandparent visitation, because it is void for lack of subject matter jurisdiction. Defendants also argue that even if subject matter jurisdiction exists, the June 15, 1995, agreed order they entered into is void for lack of consideration. Furthermore, defendants contend that the trial court's sua sponte order at the August 16, 2005, contempt hearing, forbidding the parties from having communication with Katie about this case, violates their fourteenth amendment rights to the care, custody, and control of their child.

### A. Subject Matter Jurisdiction

Defendants contend that the trial court lacked subject matter jurisdiction over plaintiff's claim for grandparent visitation, because plaintiff brought her petition for grandparent visitation pursuant to section 607(b) of the Act, which our supreme court declared unconstitutional in Wickham v. Byrne, **199 Ill. 2d 309, 320-21 2002**, on April 18, 2002. Defendants assert that this nullified any power the trial court had to enter an order in this case.[1] As a result, defendants urge that because the June 15, 1995, order is

---

[1] In her April 6, 1994, petition for grandparent visitation, plaintiff failed to specify which provision of section 607(b) applied in her case. In Wickham, our supreme court specifically declared sections 607(b)(1) and (b)(3) (750 ILCS 5/607(b)(1), (b)(3) (West 2000)), pertaining to grandparent visitation, unconstitutional. Wickham, 199 Ill. 2d at 320-21. Because plaintiff petitioned the court for grandparent visitation under section 607(b), her petition implicitly invoked the specific provisions of section 607(b) that were held unconstitutional. We also note that although Wickham did not expressly address the remaining provisions of section 607(b), its holdings affect

void, the trial court can neither enforce the order against them nor hold them in contempt for not obeying the order.

The parties disagree as to the standard of review in this case. Defendants argue that because subject matter jurisdiction is a question of law, our review is de novo. Plaintiff argues that we should reverse the trial court's order of contempt only if it is against the manifest weight of the evidence, because the final order entered by the trial court was an

---

the applicability of both those provisions. Section 607(b)(2) merely restricts the right to grandparent visitation granted in sections 607(b)(1) and (b)(3), and therefore the decision in Wickham left nothing for section 607(b)(2) to regulate. Furthermore, section 607(b)(1.5) (750 ILCS 5/607(b)(1.5) (West 2002)), allowing for stepparent visitation, was declared unconstitutional in In re Marriage of Engelkens, 354 Ill. App. 3d 790, 795 (2004), pursuant to the holdings in Wickham.

order of contempt.  Plaintiff contends that whether noncompliance with a court order is willful or the alleged contemnor had a valid excuse is a question of fact, to which the manifest-weight-of-the-evidence standard applies.  In support of her argument, plaintiff cites In re Marriage of Kneitz, 341 Ill. App. 3d 299 (2003), where this court applied a manifest-weight-of-the-evidence standard to analyze whether a Louisiana court order suspending visitation provided a valid excuse for the respondent's violation of an Illinois visitation order.  Plaintiff argues that like the Louisiana court order, the trial court's alleged lack of subject matter jurisdiction must be examined as a valid excuse not to obey a court order.

Although we would generally review the court's June 8, 2005, order denying defendants' motion to dismiss under a de novo standard (Brennan v. Kadner, 351 Ill. App. 3d 963, 967 (2004)), and its August 22, 2005, order of contempt to see if it was against the manifest weight of the evidence (Kneitz, 341 Ill. App. 3d at 303), the primary issue is whether the trial court had subject matter jurisdiction over this entire action. Defendants do not argue that their willful violation of a court order was allowed because an affirmative matter excused the violation, but rather they argue that they never violated the June 15, 1995, court order because the order was void for lack of subject matter jurisdiction. Consequently, the issue on appeal is not whether the trial court erroneously found defendants' behavior contemptuous but, rather, whether the court had the authority to enter an order at all, regardless of the facts.  Subject matter jurisdiction is a question of law that we review de novo.  In re Marriage of Chrobak, 349 Ill. App. 3d 894, 897 (2004).  As a result, we review de novo the issue of whether the trial court had proper subject matter jurisdiction to enter its June 15, 1995, order.  Chrobak, 349 Ill. App. 3d at 897.

As a preliminary matter, we must address plaintiff's contention that the trial court's subject matter jurisdiction over this action is of no relevance. Because the parties agreed to visitation, plaintiff argues that the court must enforce the order of visitation even if the court never had subject matter jurisdiction over the original action. We disagree.

A consent decree is based upon the agreement of the parties. People ex rel. Fahner v. Colorado City Lot Owners & Taxpayers Ass'n, 106 Ill. 2d 1, 8 (1985). Ordinarily, a consent decree cannot be challenged, because it is a recording of an agreement between the parties and not a judicial determination of rights. Fahner, 106 Ill. 2d at 8. However, a court will vacate a consent decree in limited circumstances. See City of Highwood v. Obenberger, 238 Ill. App. 3d 1066, 1072 (1992). It is well settled that subject matter jurisdiction cannot be conferred by consent, stipulation, or waiver. Chrobak, 349 Ill. App. 3d at 897. Although a consent decree is not a judicial determination of rights (Fahner, 106 Ill. 2d at 8), it is a recordation of the parties' private agreement in a judicial order (M.M.D., 213 Ill. 2d at 114). Any order or judgment of a court is void in the absence of subject matter jurisdiction and may be attacked at any time. Sarkissian v. Chicago Board of Education, 201 Ill. 2d 95, 103 (2002). As a result, we conclude that, like any court order, an agreed order is void if the court lacks subject matter jurisdiction to enter it. City of Marseilles v. Radke, 287 Ill. App. 3d 757, 760 (1997).

Plaintiff further argues that subject matter jurisdiction is not an issue because whether a court may enforce a provision of a consent decree providing for grandparent visitation was addressed by M.M.D., which holds that courts must uphold orders in which parents agree to grandparent visitation, despite the holdings of Wickham. In response, defendants argue that M.M.D. does not confront the jurisdictional issues in this case and that Dobbs is directly

on point.  We agree with defendants that M.M.D. does not resolve the jurisdictional issues in this case, but we do not apply Dobbs.

In M.M.D., our supreme court considered whether a provision of a consent decree granting grandparent visitation was void as a result of its decision in Wickham.  M.M.D., 213 Ill. 2d at 113-14.  The original action in M.M.D. involved two consolidated cases brought under the Illinois Probate Act of 1975 (755 ILCS 5/11a--4 (West 1996)) and the Illinois Parentage Act of 1984 (750 ILCS 45/1 et seq. (West 1996)), respectively.  M.M.D., 213 Ill. 2d at 107.  As a result of those consolidated cases, a father entered into an agreed order with his child's maternal grandparents, allowing for grandparent visitation. M.M.D., 213 Ill. 2d at 108.  After our supreme court's decision in Wickham, the father petitioned the trial court to modify the parties' agreement to exclude grandparent visitation because this provision was void as a result of Wickham.  M.M.D., 213 Ill. 2d at 111.  Our supreme court concluded that the trial court could enforce a provision of a consent decree allowing for grandparent visitation because the parties agreed to the visitation, and therefore, the state did not interfere with the parent's fundamental rights, and the holdings of Wickham were not implicated.  M.M.D., 213 Ill. 2d at 114. The M.M.D. court further held that courts are obligated to uphold voluntary visitation agreements made by fit parents as long as they do not violate public policy.  M.M.D., 213 Ill. 2d at 116.

Despite its similarities to M.M.D., the case before us concerns a different issue from that explored by our supreme court in M.M.D..  In M.M.D. our supreme court did not consider whether the trial court had subject matter jurisdiction over disputes concerning grandparent visitation, but whether a provision of a consent decree allowing grandparent visitation was void as unconstitutional.  M.M.D., 213 Ill. 2d at 112.  While we agree with

plaintiff that in M.M.D. our supreme court held that a trial court can constitutionally enter and enforce an agreed order in which parents allow for grandparent visitation (M.M.D., 213 Ill. 2d at 116), the issue presented in this case concerns the prerequisite to a court's entry or enforcement of any order: subject matter jurisdiction (Sarkissian, 201 Ill. 2d at 103; *Diaz v. Provena Hospitals, 352 Ill. App. 3d 1165*, 1173 (2004)). In M.M.D., the court had subject matter jurisdiction to enter the agreed order under provisions of both the Illinois Probate Act and the Illinois Parentage Act. M.M.D., 213 Ill. 2d at 107. In this case, the court's subject matter jurisdiction to enter an order could arise only from its power to grant the relief of grandparent visitation. If a court has no authority to hear the subject matter of a petition, any order it enters, agreed or otherwise, is void and unenforceable. *Diaz, 352 Ill. App. 3d at* 1173; Radke, 287 Ill. App. 3d at 761. Therefore, this case is distinguishable from M.M.D. because defendants object to the court's jurisdiction to hear claims seeking grandparent visitation, rather than its power to enter an agreed order including grandparent visitation as part of a case it has the authority to decide.

However, although we agree with defendants that M.M.D. does not resolve the jurisdictional issues in this case, we do not agree that Dobbs is directly on point. In Dobbs, the consent decree at issue was the result of an action for marital dissolution under the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 et seq. (West 2002)). Dobbs, 358 Ill. App. 3d at 313. Even though the court had subject matter jurisdiction to enter an agreed order in the divorce case, the Dobbs court held it could not enforce provisions of their marital settlement agreement in which the parents agreed to visitation with their adult child. Dobbs, 358 Ill. App. 3d at 313. The Dobbs court held that the agreement for visitation violated public policy because it was clearly contrary to what the

statute had declared to be the public policy and that the court did not have subject matter jurisdiction to grant visitation with an adult child. Dobbs, 358 Ill. App. 3d at 312-13. Defendants construe Dobbs to mean that consent decrees cannot be entered without subject matter jurisdiction. Although we agree with that proposition for the reasons discussed above, Dobbs, like M.M.D., does not address a trial court's subject matter jurisdiction to enter an agreed order but rather whether the court had subject matter jurisdiction to enter a specific provision of the consent decree, that is, visitation with an adult child (Dobbs, 358 Ill. App. 3d at 310). M.M.D. has already held that a court may enforce an agreement providing for grandparent visitation within a consent decree when it has subject matter jurisdiction to hear the case. M.M.D., 213 Ill. 2d at 114. For our purposes, the Dobbs analysis is no different from that of M.M.D. Both confront the court's authority to enforce the substance of the consent decree, rather than the court's subject matter jurisdiction to enter any order in the case, agreed or otherwise. Therefore, neither Dobbs nor M.M.D. answers the question whether a trial court has subject matter jurisdiction over an action for grandparent visitation. Consequently, we proceed to address whether the trial court had subject matter jurisdiction to enter an agreed order.

A court may use its contempt powers to enforce its orders. Diaz, 352 Ill. App. 3d at 1173. However, if the judgment upon which a contempt order is based is void, then a contempt judgment cannot be sustained on review. Diaz, 352 Ill. App. 3d at 1173. An order or judgment is void if the court lacks subject matter jurisdiction over the matter before it. Diaz, 352 Ill. App. 3d at 1173. Subject matter jurisdiction refers to the power of the court to hear and determine cases. Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 199 Ill. 2d 325, 340 (2002). With the exception of the circuit court's power to review

administrative action, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution. Belleville Toyota, Inc., 199 Ill. 2d at 334. The subject matter jurisdiction of a case does not simply mean the jurisdiction over the particular case, but the court's jurisdiction over the class of cases to which the case belongs. Health Cost Controls v. Sevilla, 307 Ill. App. 3d 582, 587 (1999). Therefore, even if plaintiff defectively stated her claim, the circuit court was not necessarily deprived of subject matter jurisdiction. Belleville Toyota, Inc., 199 Ill. 2d at 340. As noted, a judgment by a court that lacked subject matter jurisdiction may be attacked at any time in the proceeding, and jurisdiction cannot be conferred by stipulation, consent, or waiver. Chrobak, 349 Ill. App. 3d at 897.

Defendants argue that the trial court lacked subject matter jurisdiction over plaintiff's claim for grandparent visitation because plaintiff brought her petition for grandparent visitation pursuant to section 607(b) of the Act. Defendants note that our supreme court declared the provisions of section 607(b) of the Act pertaining to grandparent visitation unconstitutional in Wickham because they required the state to interfere with fit parents' rights to make decisions about the care, custody, and control of their children. Wickham, 199 Ill. 2d at 320. Defendants claim that Wickham nullified any power the court had to grant grandparent visitation.

An unconstitutional statute cannot confer subject matter jurisdiction. See People v. Gersch, 135 Ill. 2d 384, 392 (1990); Hurst v. Capital Cities Media, Inc., 323 Ill. App. 3d 812, 820-21 (2001). In Wickham, our supreme court declared sections 607(b)(1) and (b)(3) of the Act facially unconstitutional, holding that a court's grant of grandparent visitation interfered with a parent's fundamental right, under the fourteenth amendment to the United

States Constitution, to make decisions concerning the care, custody, and control of his children, because it exposed the decision of a fit parent to the unfettered value judgment of a judge and the micromanaging of the state. Wickham, 199 Ill. 2d at 320. An unconstitutional statute is void ab initio. Gersch, 135 Ill. 2d at 392. This means that a decision holding a statute unconstitutional is applied retroactively, nullifying any effect the law may have had, and returning the law to its state before the adoption of the unconstitutional statute. Gersch, 135 Ill. 2d at 392. Although the ab initio doctrine has recently been applied with qualifications to procedural matters (Perlstein v. Wolk, 349 Ill. App. 3d 161, 168 2004), where a party's constitutional rights are in need of vindication, strict application of the void ab initio doctrine is appropriate. Yakubinis v. Yamaha Motor Corp, U.S.A., 365 Ill. App. 3d 128, 134 (2006). Because sections 607(b)(1) and (b)(3) affected substantive rights, and were declared unconstitutional for violating parents' constitutional liberty interests (Wickham, 199 Ill. 2d at 320), the ab initio doctrine strictly applies (see Gersch, 135 Ill. 2d at 392; Yakubinis, 365 Ill. App. 3d at 134). Accordingly, sections 607(b)(1) and (b)(3) are treated as inoperative from their inception. Hurst, 323 Ill. App. 3d at 820. Therefore, because the provisions of section 607(b) allowing for grandparent visitation were inoperative, they conferred no subject matter jurisdiction on the court to hear and determine plaintiff's petition. See Gersch, 135 Ill. 2d at 392.

Plaintiff next argues that even if the court did not have jurisdiction to hear her case under section 607(b) of the Act, it had subject matter jurisdiction under the common law. Defendants, citing In re Marriage of Casarotto, 316 Ill. App. 3d 567, 571 (2000), argue that the court's subject matter jurisdiction over visitation matters is confined to provisions of the Illinois Marriage and Dissolution of Marriage Act, and therefore when the provisions of

section 607(b) providing for grandparent visitation were found unconstitutional the court's jurisdiction to grant grandparent visitation disappeared. We disagree with defendants.

When a statute is void ab initio, the parties are relegated to the rights they had prior to the enactment of the statute. In re Marriage of Sullivan, 342 Ill. App. 3d 560, 565 (2003). The court's subject matter jurisdiction over an action is limited by statute only if the statute alone created the court's jurisdiction. In re Estate of Gebis, 186 Ill. 2d 188, 192 (1999). Because the circuit court enjoys original jurisdiction over all justiciable matters (Belleville Toyota, Inc., 199 Ill. 2d at 334), the legislature may not limit the circuit court's original jurisdiction, but it may create new justiciable matters (Gebis, 186 Ill. 2d at 192). When the legislature has created a new justiciable matter, it may limit or preclude the circuit court's authority as it determines. Gebis, 186 Ill. 2d at 192-93. Subject matter jurisdiction in some divorce and juvenile actions has been limited to the statutory powers given to the court, because these powers never existed at common law and were created solely by the legislature. In re M.M., 156 Ill. 2d 53, 63 (1993); In re Marriage of Roe, 352 Ill. App. 3d 1155, 1163 (2004). However, the equitable powers of the court over grandparent visitation existed at common law prior to and independent of the enactment of section 607(b) of the Act. Chodzko v. Chodzko, 66 Ill. 2d 28, 33 (1976); Hawkins v. Hawkins, 102 Ill. App. 3d 1037, 1039 (1981); Boyles v. Boyles, 14 Ill. App. 3d 602, 604 (1973). As a result, the court's jurisdiction over grandparent visitation was not created by the legislature, and therefore it did not disappear with the statute. See M.M., 156 Ill. 2d at 67-68, citing In re Adoption of Scraggs,125 Ill. 2d 382 (1988); Sullivan, 342 Ill. App. 3d at 563.

We note that in M.M.D. our supreme court chose not to address the common law governing a court's right to grant grandparent visitation. M.M.D., 213 Ill. 2d at 116-17. The

M.M.D. court held that the principles of common law determining the court's authority to grant grandparent visitation were not at issue, because the court did not impose grandparent visitation in that case but, rather, enforced the visitation agreement voluntarily entered into by the parent. M.M.D., 213 Ill. 2d at 117. Unlike the court's ability to enforce specific provisions of a consent decree, the court's ability to enter an order cannot be conferred by the parties. Chrobak, 349 Ill. App. 3d at 897. Power of the court to enter an agreed order was not at issue in M.M.D. In the case at bar, although the parties agreed to grandparent visitation, subject matter jurisdiction hinges on the court's general authority to grant such relief. See Radke, 287 Ill. App. 3d at 760. As a result, this is a case where the state of common-law grandparent visitation must be confronted. Therefore, we next examine whether, in the absence of the provisions of section 607(b) allowing the court to grant grandparent visitation, the court had subject matter jurisdiction to hear plaintiff's petition at common law.

Under the common law that existed prior to the statute, courts had subject matter jurisdiction to award grandparents visitation with their grandchildren when special circumstances were shown. Bush v. Squellati, 122 Ill. 2d 153, 156 (1988) ("Special circumstances *sufficient to grant visitation rights to grandparents have been found where the natural father was inducted into the armed forces and he had petitioned the court to allow his parents to visit with his child during his absence Solomon v. Solomon 1943 , 319 Ill. App. 618 ,* and where the natural father had died and had named his parents trustees of a fund which was for the benefit of his child (Lucchesi v. Lucchesi (1947), 330 Ill. App. 506). In Boyles v. Boyles (1973),14 Ill. App. 3d 602, the appellate court [also] found it to be error to deny the natural grandparents' petition for visitation as a matter of law where the child had just lost his mother and was

extremely close to his grandparents by virtue of the fact that prior to his mother's death, the child had visited with the grandparents every day"); see also Chodzko, 66 Ill. 2d at 32. Defendants cite several cases since Wickham that have refused to apply the common law, because the special circumstances test applied the best interests standard. In re Marriage of Ross, 355 Ill. App. 3d 1162, 1169-70 (2005); Beurksen v. Graff, 351 Ill. App. 3d 148, 150 (2004); Langman v. Langman, 325 Ill. App. 3d 101, 107-08 (2001). Defendants note that in Wickham, our supreme court held that a best interests standard, which allowed a judge to independently decide if a child should visit with his grandparents, violated the fourteenth amendment because it allowed a judge to infringe on the decisions of fit parents merely because a "better" decision could be made and to do so absent a presumption that the parents acted in the child's best interests. Wickham, 199 Ill. 2d at 320. Defendants contend that because the common law in existence prior to section 607(b) used the same standards ruled unconstitutional in Wickham, the common-law standard of special circumstances is also unconstitutional. We do not disagree. However, in the civil context opinions are usually presumed to be given both retroactive and prospective effect. Oak Grove Jubilee Center, Inc. v. City of Genoa, 347 Ill. App. 3d 973, 980 (2004). Therefore, the common law we apply to determine whether the trial court had subject matter jurisdiction at the time plaintiff filed her petition is not the common law that existed at the time section 607(b) was enacted, but the common law that has evolved from the supreme court's findings in Wickham. As such, we consider what impact the findings of Wickham have on the common-law right to grandparent visitation that exists in the absence of sections 607(b)(1) and (b)(3).

In <u>Wickham</u>, the court held that the state cannot interfere with parents' fourteenth amendment rights to the care, custody, and control of their children unless it does so to protect the health, welfare, or safety of the children. <u>Wickham</u>, 199 Ill. 2d at 317. A fit parent is presumed to act in the best interest of her child, and consequently, any interference with parental decision making must begin with this presumption. <u>Wickham</u>, 199 Ill. 2d at 318. As a result, the <u>Wickham</u> court held that when ruling on a petition for grandparent visitation, a trial court must accord some special weight to a fit parent's determination of her child's best interest. <u>Wickham</u>, 199 Ill. 2d at 320. Because sections 607(b)(1) and (b)(3) failed to accord this weight to a parent's decision, they significantly interfered with parents' liberty interests under the fourteenth amendment. <u>Wickham</u>, 199 Ill. 2d at 320. Furthermore, the <u>Wickham</u> court found no compelling interest in that case that would justify such an intrusion on these rights. <u>Wickham</u>, 199 Ill. 2d at 317. While the court recognized that the state may interfere with a parent's right to the care, custody, and control of her child to protect the health, safety, or welfare of the child, it found that the parent's decision to prevent grandparent visitation presented no such threat. <u>Wickham</u>, 199 Ill. 2d at 317. Therefore, in that case, the court found that no compelling state interest existed to overcome the parents' fourteenth amendment rights to limit grandparent visitation. <u>Wickham</u>, 199 Ill. 2d at 317.

The holdings of <u>Wickham</u> narrowed the earlier common-law doctrine that grandparent visitation could be granted under special circumstances, by eliminating a judge's power to make a decision in the child's best interest without the presumption that the parent acted in the child's best interest (see <u>Chodzko</u>, 66 Ill. 2d at 34; <u>Boyles</u>, 14 Ill. App. 3d at 604). Consequently, the findings of <u>Wickham</u> severely limited the circumstances

in which courts could grant grandparent visitation under the common law.  <u>Wickham</u>, 199 Ill. 2d at 320.  However, in <u>Wickham</u>, our supreme court made no determination as to whether a court can grant grandparent visitation when the presumption that parents act in the best interest of their children is overcome, or when a grandparent can show that visitation must occur for the health, well being, or safety of a child.  Therefore, the court's right to grant grandparent visitation under the common law, while severely limited, was not completely eliminated.  As a result, trial courts of this state had subject matter jurisdiction to hear cases concerning grandparent visitation, at the time plaintiff filed her case.[2]

---

[2]Since plaintiff filed her petition, the Illinois legislature enacted a new grandparent visitation

No. 2--05--0848

statute (Pub. Act 93--911, eff. January 1, 2005) providing that when a court reviews a petition for grandparent visitation there is a rebuttable presumption that a fit parent's actions and decisions regarding grandparent visitation are not harmful to her child's mental, physical, or emotional health, and that a grandparent seeking visitation has the burden to prove that the parent's actions regarding visitation are harmful to the child's mental, physical, or emotional health.

However, defendants argue that because plaintiff filed her petition pursuant to section 607(b) of the Act, and not pursuant to the common law, the common law cannot now be used to invoke jurisdiction. Defendants contend that application of the common law would be unfair because the case was filed and settled under the terms of section 607(b). We disagree.

In order to invoke the subject matter jurisdiction of the circuit court, a plaintiff's case, as framed by the complaint or petition, must present a justiciable issue. Belleville Toyota, Inc., 199 Ill. 2d at 334. The test for the presence of a justiciable issue is found in the nature of the case as made by the pleading and the relief sought. Sullivan, 342 Ill. App. 3d at 563. However, the nature of the case is not determined strictly by the statute or statutes invoked, but by the issues presented by the facts of the pleading and the relief requested. See People ex rel. Scott v. Janson, 57 Ill. 2d 451, 460 (1974).

Because the nature of a case is more than the statute invoked, courts have looked beyond the statute listed in the pleading to determine the nature of the case for the purposes of subject matter jurisdiction. Most notably, in Janson, 57 Ill. 2d at 460, our supreme court defined the nature of a case broadly, holding that the plaintiff's filing of its petition pursuant to provisions of the Environmental Protection Act (Ill. Rev. Stat., 1970 Supp., ch. 111c, par. 1001 et seq.) did not prevent the circuit court from having subject matter jurisdiction under common-law principles. In Janson, the Attorney General of Illinois and others filed an action seeking an ex parte emergency injunction, a hearing, and a permanent injunction to enjoin the defendant's use of land as a commercial garbage dump, citing provisions of the Environmental Protection Act (Ill. Rev. Stat., 1970 Supp., ch. 111½, par. 1001 et seq. . Janson, 57 Ill. 2d at 454. The circuit court granted the plaintiffs' petition

for an ex parte injunction, but later dismissed the ex parte injunction, finding that there was no extreme emergency required by the Environmental Protection Act. Janson, 57 Ill. 2d at 454. The defendant then filed a motion to dismiss the case. Janson, 57 Ill. 2d at 454. However, the circuit court denied the defendant's motion to dismiss the case. Janson, 57 Ill. 2d at 454. The parties then entered into a stipulation in which the defendant agreed to clean up the site and abide by the Environmental Protection Act guidelines. Janson, 57 Ill. 2d at 454. Thereafter, the defendant failed to abide by the provisions of the stipulation. Janson, 57 Ill. 2d at 455. The circuit court fined the defendant and later held him in contempt for failing to cooperate with the court's assessment of his assets. Janson, 57 Ill. 2d at 455; see also People ex rel. Scott v. Janson, 10 Ill. App. 3d 787, 790 (1973), rev'd, Janson, 57 Ill. 2d 451. The defendant appealed, claiming that the stipulation was void because the trial court had no subject matter jurisdiction over the case after the petition for emergency relief was dismissed, as the Environmental Protection Act authorized the circuit court to rule only on a petition for emergency relief and reserved the other rulings for administrative action. Janson, 57 Ill. 2d at 453.

The appellate court agreed with the defendant, holding that the trial court lacked jurisdiction over the subject matter of the proceedings after the dissolution of the ex parte injunction, because the complaint specifically invoked the procedure and relief granted by the Environmental Protection Act, and not other statutes or laws, and the Environmental Protection Act did not authorize the other relief the plaintiffs sought in circuit court. Janson, 10 Ill. App. 3d at 795. Our supreme court reversed, holding, first, that the Environmental Protection Act allowed the plaintiffs to bring an action in the circuit court. Janson, 57 Ill. 2d at 459. However, in addition, our supreme court defined the nature of the case much more

broadly than the rights invoked by the statute, and instead looked at all the issues raised in the complaint and the relief the plaintiffs requested to determine if the trial court had subject matter jurisdiction. Janson, 57 Ill. 2d at 460. Our supreme court held that the nature of the case was generally "to restrain pollution violations" and that, although the Environmental Protection Act was specifically referred to, the issues of pollution raised in the complaint also invoked the circuit court's common-law jurisdiction to abate public nuisances. Janson, 57 Ill. 2d at 460. Because the complaint outlined pollution violations and sought injunctive relief, jurisdiction existed under the common law as well as the Environmental Protection Act even though the common law was not specifically invoked. See Janson, 57 Ill. 2d at 460.

Similarly, in Rochon v. Rodriguez, 293 Ill. App. 3d 952, 954 (1997), and Maddox v. Williamson County Board of Commissioners, 131 Ill. App. 3d 816, 822 (1985), although the plaintiffs filed their complaints pursuant to provisions of the Administrative Review Law (735 ILCS 5/3--112 (West 1992)), the First and Fifth Districts, respectively, found that subject matter jurisdiction existed under the common law. In both Rochon and Maddox, the plaintiffs filed their complaints pursuant to the Administrative Review Law, which was inapplicable in those cases. Rochon, 293 Ill. App. 3d at 954; Maddox, 131 Ill. App. 3d at 822. However, in Rochon, the First District held that although the complaint was not reviewable pursuant to the Administrative Review Law set forth in the complaint, the circuit court had subject matter jurisdiction to consider the complaint because the pleading set forth a justiciable question of whether the defendants had breached sections of the Chicago Municipal Code. Rochon, 293 Ill. App. 3d at 956. Similarly, in Maddox, the Fifth District held that although the complaint was pursuant to the Administrative Review Law, where the

Administrative Review Law was inapplicable, the trial court had subject matter jurisdiction to grant relief under common-law certiorari even though the common law was not specifically referenced. Maddox, 131 Ill. App. 3d at 822.

Similar to Janson, Rochon, and Maddox, in this case, plaintiff petitioned the court pursuant to a specific statute, section 607(b) of the Act, under which the court had no subject matter jurisdiction (Wickham, 199 Ill. 2d at 320-21). Just as the Janson court considered the nature of that case to be "to restrain pollution violations" rather than to specifically grant relief pursuant to the Environmental Protection Act, we believe that the nature of plaintiff's case was to obtain grandparent visitation and not solely grandparent visitation as provided by section 607(b) of the Act. Plaintiff's petition, entitled "Petition for Grandparent Visitation," set forth facts alleging that she had not received grandparent visitation, and requested such relief. The court did have subject matter jurisdiction pursuant to the common law to decide the issues set forth in the petition and to grant the specific relief asked for in the petition. Therefore, we do not believe that the recitation of the unconstitutional statute in the petition, or the failure to specifically invoke the common law, eliminated the court's subject matter jurisdiction under the common law that grants the same relief.

We note that in this case, as in Janson, Rochon, and Maddox, the court had subject matter jurisdiction to grant the same relief asked for in the petition pursuant to different authority from that cited by plaintiff. This is significantly different from when a court grants relief that has not been requested in the petition. See Ligon v. Williams, 264 Ill. App. 3d 701, 707 (1994). Because the complaint frames the nature of the case and circumscribes the relief requested, a court does not have subject matter jurisdiction to grant relief not

requested in the complaint simply because it could have granted such relief if it had been requested. Ligon, 264 Ill. App. 3d at 707. For example, in Ligon, the plaintiff filed a petition requesting that the court find a parent-child relationship between the defendant and the child, and that the defendant pay child support. Ligon, 264 Ill. App. 3d at 702. When the plaintiff failed to appear for a hearing on these issues, the court awarded custody of the child to the defendant. Ligon, 264 Ill. App. 3d at 703. In reviewing the trial court's custody decision, the First District held that the trial court lacked subject matter jurisdiction to grant custody to the defendant, because no petition had requested such relief. Ligon, 264 Ill. App. 3d at 707-08. Therefore, although the court had the power to grant custody generally, it did not have the subject matter jurisdiction to grant relief not requested in the petition before it. Ligon, 264 Ill. App. 3d at 707.

The case at bar is distinguishable from Ligon because in this case the circuit court did not grant any relief different from that requested in plaintiff's petition and, therefore, never varied from the nature of the case as framed by the petition. Here, the relief considered by the court, grandparent visitation, was the same as the relief requested in the petition. Although the statute cited in plaintiff's petition may not have given the court authority to grant that relief, the subject matter jurisdiction to grant the relief circumscribed by the petition existed under the common law. Where a petition defines a case for grandparent visitation and asks for the relief of grandparent visitation, and a court has subject matter jurisdiction over cases requesting grandparent visitation, the court has subject matter jurisdiction over that petition. Because subject matter jurisdiction is determined by the type of cases and not the individual case itself, it does not matter if the petition fails to state a cause of action, but merely if it states facts and asks for relief that

creates a type of case the court decides. Belleville Toyota, Inc., 199 Ill. 2d at 340. We believe that despite invoking section 607(b), plaintiff's petition framed a case for grandparent visitation, and because the court had subject matter jurisdiction over cases concerning grandparent visitation pursuant to the common law, the court had subject matter jurisdiction over plaintiff's petition.

Subject matter jurisdiction is merely the door through which parties enter the courtroom. In this case, defendants argue that the door was shut to plaintiff as soon as the provisions of section 607(b) providing for grandparent visitation were found unconstitutional. We disagree. Plaintiff's petition sought grandparent visitation. Under the common law, which we have determined includes Wickham, the court maintained jurisdiction to hear and determine whether grandparents were entitled to visitation with their grandchildren. Wickham greatly limited the courts' ability to grant this relief, but did not eliminate it. The validity of plaintiff's individual petition is not at issue. Belleville Toyota, Inc., 199 Ill. 2d at 340. The issue is whether the court had the power to grant the type of relief that the petition requested. Belleville Toyota, Inc., 199 Ill. 2d at 340; Health Cost Controls, 307 Ill. App. 3d at 587. We believe it did. Whether defendants chose to litigate the issue of grandparent visitation once in the courtroom was their decision. M.M.D., 213 Ill. 2d at 116. When parents agree to grandparent visitation, the courts have an obligation to uphold that agreement, except under very limited circumstances, such as when the agreement is void for public policy (M.M.D., 213 Ill. 2d at 114), or if the court lacks subject matter jurisdiction (see Radke, 287 Ill. App. 3d at 760). In this case, defendants did not challenge whether the agreement was void for public policy, and we hold that the consent decree entered into by defendants is not void for lack of subject matter jurisdiction. As a

result, the parties' agreement for grandparent visitation is enforceable. We next consider whether the June 15, 1995, visitation order is void on other grounds.

### B. Consideration

Defendants contend that because plaintiff's petition, filed pursuant to section 607(b) of the Act, had no basis in law, the forbearance of her claim provided no consideration for the agreement for visitation. Defendants argue that because the agreement was void for lack of consideration, the June 15, 1995, order embodying the agreement was unenforceable. As a result, defendants maintain that the trial court erred when it denied defendants' June 8, 2005, motion to dismiss plaintiff's petition to enforce the June 15, 1995, order, and when it entered its August 22, 2005, order holding defendants in contempt for violating the June 15,1995, order. None of the parties dispute the facts as to this matter. Therefore, our review is de novo. See AC &S v. Industrial Comm'n, 304 Ill. App. 3d 875, 879 (1999).

A consent decree is based upon the agreement of the parties and is contractual in nature. M.M.D., 213 Ill. 2d at 114. Once a decree has been entered, it is binding on the parties and cannot be amended or varied without the consent of each party. M.M.D., 213 Ill. 2d at 114. Like any other agreement, an agreed order is subject to the law of contracts. Advance Iron Works, Inc. v. ECD Lincolnshire Theater, L.L.C., 339 Ill. App. 3d 882, 887 (2003). As a result, consent decrees have been set aside upon a showing that the order resulted from the fraudulent misrepresentation, coercion, or incompetence of one of the parties, gross disparity in the position or capacity of the parties, or newly discovered evidence. Majcher v. Laurel Motors, Inc., 287 Ill. App. 3d 719, 729-30 (1997). Defendants cite no case holding a consent decree void for lack of consideration. However, because we

believe there was proper consideration for the parties' agreement in this case, we give no opinion as to whether lack of consideration voids a consent decree.

Formation of a contract requires an offer, acceptance, and consideration. La Salle National Bank v. Vega, 167 Ill. App. 3d 154, 159 (1988). Any act or promise that benefits one party or disadvantages another is sufficient consideration to support the formation of a contract. De Fontaine v. Passalino, 222 Ill. App. 3d 1018, 1028 (1991). A promise to forgo the pursuit of a legal claim is generally adequate consideration to support formation of a contract. Kalis v. Colgate-Palmolive Co., 337 Ill. App. 3d 898, 901 (2003). In this case, defendants are mistaken as to which legal claims plaintiff agreed to forbear as a result of the parties' June 15, 1995, agreement. On June 15, 1995, plaintiff and defendants entered into an order in which plaintiff agreed to withdraw her petition for further conciliation and other relief in exchange for defendants allowing plaintiff to visit with her granddaughter, Katie, twice a month for five hours each visit. Defendants contend that consideration for their June 15, 1995, agreement was plaintiff's forbearance of her right to sue under section 607(b) of the Act, which never existed. Wickham, 199 Ill. 2d at 320. However, in the agreement of June 15, 1995, plaintiff agreed to forgo her claims pursuant to the parties' previous agreement of December 16, 1994, and not the rights given to her by section 607(b). In the agreement of December 16, 1994, defendants agreed to allow plaintiff to visit with the older children and Katie once a month for six hours and allow telephonic communication between plaintiff and the Hruby children in exchange for plaintiff withdrawing her petition for grandparent visitation. When defendants breached this agreement, plaintiff filed a petition to enforce the terms of the agreement, which included returning to counseling. Therefore, in the agreed order of June 15, 1995, plaintiff conceded

a legal claim to enforce her contract rights, and not a claim under section 607(b). We now examine if plaintiff's forbearance of her contract rights under the December 16, 1994, agreement was proper consideration for the parties' June 15, 1995, agreement.

Defendants rely on two older supreme court cases, Mulholland v. Bartlett, 74 Ill. 58 (1874), and Heaps v. Dunham, 95 Ill. 583 (1880), to support their position that plaintiff's forbearance of her claims provided no consideration for the parties' agreement. A brief discussion of the law regarding consideration as it relates to the forbearance of a claim that is in doubt is helpful. Although a promise to forgo the pursuit of a legal claim is generally adequate consideration to support formation of a contract (Kalis v. Colgate-Palmolive Co., 337 Ill. App. 3d 898, 901 (2003)), there are exceptions (Mulholland, 74 Ill. at 63). In 1851, our supreme court decided McKinley v. Watkins, 13 Ill. 140, 143-44 (1851), in which it held that forbearance of a legal claim was valid consideration for a contract if the claimant "honestly supposed that he had a good cause of action." The McKinley court further opined that it is immaterial which party would ultimately prevail on the merits, unless the claim is wholly unfounded and is a mere pretense to extort money. McKinley, 13 Ill. at 144.

After McKinley, our supreme court decided Mulholland, in which it discussed the McKinley decision and concluded that, although forbearance of a claim is valid consideration, the claim forgone must have been sustainable at law or in equity. Mulholland, 74 Ill. at 62-63. In Mulholland, while the defendant was traveling far from home, a debt collector confronted the defendant with a debt of a partnership. Mulholland, 74 Ill. at 61. The defendant had never been connected to the indebted partnership and informed the collector that he was not a member of such partnership. Mulholland, 74 Ill. at 63. Although he agreed to pay the debt in exchange for the collector not immediately filing suit, the defendant stated in the

settlement agreement that he had no association with the partnership. Mulholland, 74 Ill. at 59-60. The Mulholland court held that forbearance of the suit was no consideration for the contract because the defendant had no reasonable ground for making such a promise. Mulholland, 74 Ill. at 62. The Mulholland court noted that circumstances affect cases and pointed out that the defendant had few options other than to agree to the settlement or be detained, possibly incarcerated, in a place far from home, defending a frivolous suit with few resources. Mulholland, 74 Ill. at 63-64. Unlike in McKinley, in Mulholland our supreme court did not focus its analysis of consideration on the good-faith belief of the claimant but, rather, judged the forbearance of the claim in light of whether the facts supported the claim brought against the defendant. See Mulholland, 74 Ill. at 63-64. The Mulholland analysis blurred the distinction between a claim that is in doubt and a claim utterly without foundation. See Mulholland, 74 Ill. at 63-64.

The court's reasoning in Mulholland was later cited in Heaps. Heaps, 95 Ill. at 592. However, the Heaps decision reinforced the idea that there is a distinction between the forbearance of a claim with doubtful facts and a claim made with no basis in law. Heaps, 95 Ill. at 590-91. In Heaps, the plaintiff, a 16-year-old girl who alleged that the defendant had seduced and impregnated her, agreed to compromise two suits against the defendant, for bastardy and seduction, for $1,050. Heaps, 95 Ill. at 591. When the defendant challenged the settlement of both claims, the court first held that the bastardy claim was rightfully settled because, even though the fact of the girl's pregnancy was doubtful, the defendant could have challenged the facts asserted and, instead, chose to settle the suit. Heaps, 95 Ill. at 591-92. However, the court next held that there was no valid consideration for the settlement of the seduction claim, because only the girl's parent could file a claim for

seduction, and she had no right to bring this claim. Heaps, 95 Ill. at 592. The Heaps court's disparate treatment of these two claims conveyed that so long as a party has a legal right to bring a claim, his forbearance of the claim provides proper consideration even if his claim would be unsuccessful on the merits. See Heaps, 95 Ill. at 590.

As long ago as 1913, the distinction was made between claims the claimant has no right to assert and claims the evidence may not support. Pyle v. Murphy, 180 Ill. App. 18 (1913). In Pyle, 180 Ill. App. at 25-26, the Fourth District Appellate Court offered an insightful analysis as to whether the forbearance of a claim that is in doubt can serve as consideration for a contract. The Pyle court reasoned, in light of Heaps, that in order for forbearance of a claim to provide valid consideration, the person making the claim must have a right to assert such a claim; however, if the claimant has a legal right to assert that claim and believes in good faith that he can prove such a claim, his forbearance of the claim provides proper consideration even if his claim would fail when tried on the merits. Pyle, 180 Ill. App. at 26.

The Pyle court distinguished Mulholland from other cases concerning forbearance of a claim that was in doubt, because the Mulholland court stressed the duress under which the defendant settled the claim and stated that circumstances very much affect cases. Pyle, 180 Ill. App. at 25. Unlike Pyle, in Mulholland, our supreme court reviewed whether the facts of the case supported the claim at issue, not whether the claimant had a legal right to bring the suit. Mulholland, 74 Ill. at 64. Despite any differences that exist between Pyle and Mulholland, the fact remains that Heaps, decided by our supreme court after Mulholland, is consistent with the Pyle analysis. Heaps similarly distinguished the forbearance of claims where the evidence may not support them from the forbearance of claims made without a legal basis. Heaps, 95 Ill. at 590-91. As noted by Pyle,

the <u>Heaps</u> court's treatment of the bastardy claim supports the conclusion that the forbearance of a claim that is in doubt may provide proper consideration. <u>Pyle</u>, 180 Ill. App. at 26.

Moreover, the <u>Pyle</u> analysis of the <u>Heaps</u> decision is consistent with the most recent appellate court cases discussing the forbearance of a claim as consideration. Interestingly, despite the existence of the holdings of our supreme court in <u>Heaps</u> and <u>Mulholland</u>, these modern appellate decisions evolved from the Fifth District's opinion in <u>LeMaster v. Amsted Industries, Inc.</u>, 110 Ill. App. 3d 729 (1982), <u>rev'd on other grounds by</u> <u>Wilson v. Hoffman Group, Inc.</u>, 131 Ill. 2d 308 (1989). The <u>LeMaster</u> court held that the forbearance of a claim that is not valid[3] may serve as consideration for a contract as long as the claim is not " 'entirely without foundation.' " <u>LeMaster</u>, 110 Ill. App. 3d at 736. Similarly, in <u>In re Estate of Herwig</u>, 237 Ill. App. 3d 737, 741 (1992), this court held that the compromise of a disputed claim is sufficient consideration for the formation of a contract even if that claim is not valid, as long as that claim is made in good

---

[3]While our analysis is in accordance with these modern cases, we do not believe that their use of the term "not valid" to describe a claim that may not prevail on the merits is precise enough for our purposes. We prefer to describe claims that may not prevail on the merits, but whose forbearance may serve as proper consideration, as claims that are "in doubt." This distinguishes claims that may not succeed on the merits from claims that the claimant has no legal basis to bring.

faith. In addition, both the First and Fifth Districts have held that even where the evidence never supported a party's potential claim, if the forbearing party enters the agreement to forbear the claim in good faith and never knew or should have known he could not recover at the time of the agreement, then the forbearance of his suit is sufficient consideration. F.H. Prince & Co. v. Tower Financial Corp., 275 Ill. App. 3d 792, 801 (1995); Keller v. State Farm Insurance Co., 180 Ill. App. 3d 539, 546 (1989).

This modern trend of appellate court cases is consistent with the Heaps decision because all of the claimants in the cases discussed above had a legal basis to bring their claims, even if their claims were in doubt. These claims were, therefore, not entirely without foundation, because there was a foundation in the law for the parties to bring their claims before the court to be litigated. These decisions are therefore compatible with the Heaps court's analysis of the plaintiff's bastardy claim in that case, that although the evidence of the claim may be weak or unsupportive, the settlement of a claim brought in good faith with a right to bring such an action will serve as good consideration. See Heaps, 95 Ill. at 591-92; Pyle, 180 Ill. App. at 26. Consequently, these cases support the Pyle conclusion that the forbearance of a cause of action, regardless of the merits of the claim, can provide valid consideration for a contract. See Pyle, 180 Ill. App. at 26. However, this does not change the corresponding tenet that where a person has no legal right to bring a claim against another, the forbearance of such a claim does not serve as consideration. Heaps, 95 Ill. at 592. This is a just policy because where a claim may be legally asserted, even if the facts alleged in the claim are in doubt, by settling the dispute, the opposing party reaps the benefit of not having to litigate the suit at all. See Kalis, 337 Ill. App. 3d at 901. However, where a party merely forbears a claim he has no legal right to bring, the opposing party should never have had to defend such a suit in the first place, and therefore, the settlement of such a claim does not provide a benefit to the

defendant. For this reason, merely avoiding the litigation necessary to determine that the claimant has no legal right to bring a suit does not provide proper consideration for a settlement contract.

In this case, defendants argue that plaintiff had no legal right to assert a claim against them, because her rights guaranteed by section 607(b) never existed. However, as we pointed out, the consideration for the June 15, 1995, agreement was not plaintiff's rights under section 607(b), but plaintiff's right to enforce the parties' agreement of December 16, 1994. This is an important difference. A party to a contract may sue on the contract. See White Hen Pantry, Inc. v. Cha, 214 Ill. App. 3d 627, 635 (1991). As a party to the December 16, 1994, agreement, plaintiff had a right to bring individual claims pursuant to that agreement. Even if the December 16, 1994, agreement ultimately had no consideration because the rights guaranteed by section 607(b) never existed, which proposition is by no means clear, plaintiff had a right to litigate whether that agreement was valid and could be enforced. See Awotin v. Abrams, 309 Ill. App. 421, 426 (1941). Plaintiff gave up that right on June 15, 1995, when the parties settled their dispute over the December 16, 1994, agreement. Therefore, when plaintiff agreed to forgo the right she may have under the December 16, 1994, agreement, she gave up a claim that was in doubt. Whether plaintiff, in fact, had proper consideration for the December 16, 1994, agreement is not material to this case, because even if plaintiff would not have prevailed on the merits of her claim pursuant to the December 16, 1994, agreement, the forbearance of a claim is valid consideration if the party had a right to bring the claim and did so in good faith. See Heaps, 95 Ill. at 590; F.H. Prince & Co., 275 Ill. App. 3d at 801; Keller, 180 Ill. App. 3d at 546. Defendants could have challenged the validity of the December 16, 1994, agreement they had made with plaintiff, but instead chose to settle plaintiff's claims. Defendants benefitted from the settlement of plaintiff's claims under the December 16, 1994, agreement, because they did not have to litigate the merits of the

agreement. This was a benefit received by defendants, even if they ultimately could have successfully challenged the validity of the agreement.

In addition, all the facts indicate that when she entered the June 15, 1995, agreement, plaintiff believed in good faith that she could enforce the December 16, 1994, agreement. There is no indication that plaintiff had any way of knowing that her rights under the December 16, 1994, agreement may have been invalid. This is necessarily true since sections 607(b)(1) and (b)(3) were not held unconstitutional until eight years after the agreement was entered. See Wickham, 199 Ill. 2d at 320. Therefore, because plaintiff had a legal right to pursue her contract claims and asserted this right in good faith, the forbearance of her claims provided valid consideration for the parties' June 15, 1995, agreement. See F.H. Prince & Co., Inc., 275 Ill. App. 3d at 801; Keller, 180 Ill. App. 3d at 546.

Finally, defendants cite Hurst v. Capital Cities Media, Inc., 323 Ill. App. 3d 812, 820 (2001), for the proposition that "contracts which depend on [an unconstitutional statute] for their consideration are void." In Hurst, the court did not have to address whether the forbearance of a claim made pursuant to an unconstitutional statute could provide consideration for a contract. In fact, Hurst did not concern contracts at all but, rather, discussed the effect of the ab initio doctrine on the refiling of a claim after a voluntary dismissal. Moreover, neither the case Hurst cites for this proposition, Mills v. Peoples Gas Light & Coke Co., 327 Ill. 508, 535 1927, nor the case cited by Mills, Board of Highway Commissioners v. City of Bloomington, 253 Ill. 164, 176 (1911), confronts the issue of whether the forbearance of a claim pursuant to a statute later found unconstitutional is valid consideration for a contract. Therefore, we believe that whether the forbearance of an invalid claim is consideration is better addressed by the long line of cases

discussed above.  Furthermore, because the consideration at issue in this case is the forbearance of plaintiff's claims under the parties' December 16, 1994, agreement, and not the forbearance of her claims pursuant to section 607(b) of the Act, the consideration for the June 15, 1995, agreement did not depend on an unconstitutional statute, but rather on an agreement made between the parties.

Because the June 15, 1995, agreed order is not void for either lack of subject matter jurisdiction or lack of consideration, it remains in effect.  Therefore, we affirm the trial court's June 8, 2005, order denying defendants' motion to dismiss plaintiff's petition to enforce the June 15, 1995, grandparent visitation order, and the trial court's August 22, 2005, order holding defendants in indirect civil contempt.

We next consider whether the trial court erred when, as part of its August 22, 2005, contempt order, it ordered the parties to refrain from speaking to Katie about the outcome of the case.

### C. Order Not to Communicate with Katie

Defendants contend that the trial court erred when it limited defendants' communication with their daughter in its August 22, 2005, order.  In ruling on plaintiff's petition for a rule to show cause and other relief, the trial court, sua sponte, raised the issue of communications with Katie and held that the parties were not to communicate with Katie about the outcome of the case at this time. Defendants argue that the court had no authority to prevent communications between fit parents and their child.  Defendants maintain that the court lacked authority to enter such an order because courts may not intrude on parents' fourteenth amendment rights to the care, custody, and control of their children.  Where, as here, the question on appeal is limited to the application of the law to

undisputed facts, the standard of review is <u>de</u> <u>novo</u>. <u>City of Champaign v. Torres</u>, 214 Ill. 2d 234, 241 (2005).

Where an appellant has not challenged the constitutionality of a protective order before the trial court but, rather, presents his constitutional argument for the first time on appeal, his argument may be considered waived. <u>Zielke v. Wagner</u>, 291 Ill. App. 3d 1037, 1040 (1997); <u>Doe v. Lutz</u>, 253 Ill. App. 3d 59, 66 (1993). In this case, defendants failed to make any argument before the trial court that the order prohibiting them from telling their daughter the outcome of the case violated their fourteenth amendment rights. However, the application of the forfeiture rule is less rigid where the basis of the objection is the trial court's own conduct. <u>In re Maher</u>, 314 Ill. App. 3d 1088, 1097 (2000), citing <u>People v. Davis</u>, 185 Ill. 2d 317 (1998). Therefore, we consider whether the trial court had authority to enter an order prohibiting defendants from speaking to their daughter, Katie, about the outcome of the case, in light of defendants' fourteenth amendment rights to the care, custody, and control of their child.

The fourteenth amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV. The due process clause grants heightened protection against government interference with fundamental rights. <u>Wickham</u>, 199 Ill. 2d at 316. One of the fundamental rights protected under the fourteenth amendment is the right of parents to make decisions concerning the care, custody, and control of their children without unwarranted state intrusion. <u>Wickham</u>, 199 Ill. 2d at 316. *Because a parent s decision regarding his child is entitled to great deference* <u>Wickham</u>, 199 Ill. 2d at 318 *, the state cannot overcome a parent s decisions in the care, custody, and control of his child simply because the court has a different opinion of the*

*child s best interest* (<u>Wickham</u>, 199 Ill. 2d at 320). *There is a presumption that fit parents act in the best interest of their children.* <u>Wickham</u>, 199 Ill. 2d at 318. However, the family is not beyond regulation. <u>Prince v. Massachusetts</u>, 321 U.S. 158, 166, 88 L. Ed. 645, 652, 64 S. Ct. 438, 442 (1944). The state may interfere with fundamental parental rights *when the health, safety, or welfare of a child is at risk.* <u>Wickham</u>, 199 Ill. 2d at 317; see also <u>People v. R.G.</u>, 131 Ill. 2d 328, 353 (1989).

*In <u>M.M.D.</u>, our supreme court, applying <u>Wickam</u>, found that a court s ability to enforce parents agreements regarding grandparent visitation was constitutional specifically because the parents were not ordered by the court to act and, therefore, the court had not interfered with the parents rights.* <u>M.M.D.</u>, 213 Ill. 2d at 114. *Similarly, in this case, the court s involvement in defendants decisions regarding the control, custody, and care of their child derived only from the court s obligation to enforce defendants agreement.* See <u>M.M.D.</u>, 213 Ill. 2d at 114. *A provision prohibiting the parties from discussing the case with Katie was not contained in the June 15, 1995, agreement between the parties. Therefore, the court s authority to forbid defendants from speaking to Katie was not derived from defendants earlier consent. Consequently, we next consider if the trial court s order, addressing matters outside of the agreement, was an intrusion on defendants parental rights.*

Parents' protected liberty interests include the right to make decisions about their children's education, religion, and general upbringing. <u>Wickam</u>, 199 Ill. 2d at 317. These interests are compromised when the state interferes in the family relationship on behalf of the child. <u>R.G.</u>, 131 Ill. 2d at 344. Court proceedings concerning domestic relations can, in themselves, be so disruptive of the parent-child relationship that the rights of the parent to make basic determinations about the child's welfare are implicated. <u>Lulay v. Lulay</u>, 193 Ill. 2d 455, 474-75 (2000). In this case, the trial court usurped defendants' power, as parents, to decide whether to discuss the outcome of the case with their daughter. The topics of conversation barred by the trial court involved both Katie's

visitation with her grandmother and her parents' imprisonment, both of which concern her care and upbringing. As a result, we conclude that the court's order forbidding such discussion interfered with defendants' parental liberty interests as guaranteed by the fourteenth amendment. See Wickham, 199 Ill. 2d at 316. Such an intrusion will be justified only when the state has a compelling interest. See Lulay, 193 Ill. 2d at 475.

Although the state may interfere with parents' liberty interests in order to protect the health, welfare, or safety of a child (Wickham, 199 Ill. 2d at 317), defendants assert that nothing in the record indicates that protection was the purpose of the trial court's order forbidding defendants' communication with Katie about the case. We agree. Upon its order that neither of the parties have any communication with Katie as to the outcome of the case or its effect, the court stated that, "There is no reason, frankly, that she needs to know that her grandmother and her parents are at loggerheads with the possibility that somebody is going to jail over it on this case." The court made no further findings about why this order was entered. The trial court never heard argument from either party as to how Katie's knowledge of the case would affect her health, safety, or well being. Moreover, throughout the proceedings on defendants' motion to dismiss and plaintiff's petition for a rule to show cause, no evidence was offered to show that an order limiting defendants' disclosure of the outcome of the case was justified to protect Katie's health, safety, or well being. In fact, at the August 16, 2005, hearing, in which defendants were required to show cause, the trial court specifically noted that it did not have sufficient evidence to determine Katie's best interests. In addition, because the issue was raised sua sponte, the parties had no notice that argument or evidence on this point was warranted. Therefore, without anything in the record to indicate that such restrictions were necessary to protect Katie's health, safety, or well being, the court had no basis for intervening in defendants' decisions in regard to the care, custody, and control of their child beyond enforcing defendants' agreement with plaintiff. See

M.M.D., 213 Ill. 2d at 114; Wickham, 199 Ill. 2d at 318. *As a result, we find that the court erred when it entered an order sua sponte that required defendants to refrain from speaking to their daughter about the order of contempt.*

In their reply brief, defendants also contend that the order limiting their communication with Katie violates their first amendment rights and that, because this was a law court and not an equity court, the court could not order the parties to do or refrain from doing anything beyond the provisions of their June 15, 1995, agreement. However, these issues were not raised in the appellants' brief. Therefore, under Supreme Court Rule 341(e)(7) (*Official Reports Advance Sheet No. 21 October 17, 2001, R. 341 e 7, eff. October 1, 2001*) these issues are waived and cannot be raised in the reply brief, in oral argument, or on petition for rehearing. In addition, defendants cite no authority for any of their arguments in their reply brief. Rule 341(e)(7) also requires that the appellant cite authority for his arguments. *Official Reports Advance Sheet No. 21 October 17, 2001, R. 341 e 7, eff. October 1, 2001.* Therefore, defendants' new arguments are waived for that reason also. See People v. Trimble, 181 Ill. App. 3d 355, 356-57 (1989).

However, because we find that the trial court's order prohibiting defendants from speaking to Katie about the case unjustifiably infringed upon their fourteenth amendment rights, we vacate this portion of the order.

### III. CONCLUSION

After reviewing all of defendants' arguments on appeal, we hold that the trial court did not err when it entered its June 8, 2005, order denying defendants' motion to dismiss or when it entered its August 22, 2005, order holding defendants in contempt, because its June 15, 1995, order was not void. We also hold that the trial court erred when, in its

August 22, 2005, order, it directed defendants not to communicate with their daughter about the outcome of the case, and we vacate that portion of the order.

Affirmed in part and vacated in part.

BOWMAN, J., concurs.

JUSTICE McLAREN, dissenting in part and specially concurring in part:

I dissent in part because I believe that the majority has violated a basic principle of procedural interpretation. The majority states that the single count filed by plaintiff relates to a statutory cause of action found to be unconstitutional and void ab initio. The majority should have stopped there and said that the only count pled does not give the court subject matter jurisdiction, and the cause should be dismissed as void.

Unfortunately, the majority proceeds to reinterpret the statutory claim and determines that it is also a common-law claim. I submit that it is axiomatic that, if a count is a statutory claim, it cannot also be a common-law claim. Assuming, arguendo, that it were, it still should be pled as a separate count as required by section 2--613(b) of the Code of Civil Procedure (735 ILCS 5/2--613(a) (West 2004)). The majority subverts the rule of procedure that requires parties to plead "as many causes of action *** as they may have, and each shall be separately designated and numbered." 735 ILCS 5/2--613(a) (West 2004).

Analogically, the majority has determined that the apple is not merely an apple, it is both an apple and an orange. It accomplishes this feat of legerdemain by reviewing case law that is factually inapposite and applying the general statements of law contained therein without placing the statements in context. Not a single case cited by the majority involved a complaint wherein the count or counts were all deemed to be void. Not one case interpreted a single count as properly (or improperly) containing multiple causes of action. Not one case allowed a plaintiff to plead separate

causes of action in a single count. Not one case allowed the majority to do what it does in this disposition--to interpolate a common-law cause of action in a clearly statutory cause of action. An example of the improper reliance upon inapposite case law is embodied in the majority's reference to Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 199 Ill. 2d 325 (2002), as precedential authority. The case is not factually similar. Our supreme court therein rejected the defendants' argument that the limitations period in the Motor Vehicle Franchise Act was a jurisdictional prerequisite to suit. The court reviewed the complaint and determined that the allegations set forth in the complaint stated a cause of action independent of the statute of limitations. However, the court went on to say, "Thus, in order to invoke the subject matter jurisdiction of the circuit court, a plaintiff's case, as framed by the complaint or petition, must present a justiciable matter. See People ex rel. Scott v. Janson, 57 Ill. 2d 457, 459 (1974) (if a complaint states a case belonging to a general class over which the authority of the court extends, subject matter jurisdiction attaches) [citations]." Belleville, 199 Ill. 2d at 334. The court in Belleville reviewed the complaint and did not parse words or find a cause of action at common law integrated into a void statutory cause. It did not even find the count void. It merely found that a limitations period in a particular statute was not jurisdictional.

In conclusion, to interpolate a common-law cause of action as an integral part of a statutory count and allow the trial court to proceed without a separate common-law count vitiates the requirement to plead separate counts and allows courts to "read between the lines" to establish that a count, no matter how defective, has been pled. Plaintiff argues that such relief existed at common law. That is true. However, subject matter jurisdiction is not determined by whether or not a cause of action exists outside of a complaint. Subject matter jurisdiction is determined by whether or not the complaint contains at least one count that alleges a cause of action. Plaintiff had the right to

plead more than one version of her claim, but she chose not to do so. Because plaintiff failed to include a common-law count, the trial court lacked subject matter jurisdiction, and the orders appealed from are void.

I specially concur as to the portion of the majority opinion that vacates the order prohibiting the parents from communicating with their daughter. I do not disagree with the analysis of the majority. However, the analysis contained in the partial dissent above establishes that the trial court did not have subject matter jurisdiction and, therefore, had no jurisdiction to enter the order prohibiting communication in the first instance. See In re Adoption of Schumacher, 120 Ill. App. 3d 50, 56 (1983) (petition for rule to show cause was properly dismissed because it was based upon the alleged violation of a void visitation order). I believe the same rationale applies here.